No. 85-511

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

CONSTANTINE PROTO, d/b/a FUR
BOUTIQUE,

        Plaintiff and Appellant,

  -vs-

JAMES ELLIOT  and AZARA STINGER,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Goldman & Goldman; Terry G. Sehestedt, Missoula,
Montana

    For Respondent:

        Sherwood & Englund; Michael J. Sherwood, Missoula,
Montana

---

                    Submitted on Briefs: June 20, 1986

                      Decided:  July 31, 1986

Filed:  JUL 31 1986

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Constantine Proto, appeals from the judgment of the District Court, Fourth Judicial District, County of Missoula, awarding respondent, Azra Stinger, $3,500.00 together with costs and attorney fees.

In 1980, Proto and Stinger, together with their respective spouses, formed a corporation with each family owning half of the corporate shares. The principal business activity of the corporation was the operation of a fur business in Missoula, Montana, known as the Fur Boutique. Proto and Stinger conducted the day-to-day operation of the business.

The parties' business was not a particular success financially. The relationship between Proto and Stinger deteriorated with Proto openly critical of Stinger's performance. In December, 1981, Stinger told Proto she was thinking of leaving the business. The parties initially were unable to arrive at acceptable terms for Proto's purchase of Stinger's interest in the business. Stinger eventually withdrew all the cash from the business bank account, changed the locks on the business premises and removed her personal property from the business. Ultimately, on March 24, 1982, the parties entered an agreement which called for transfer of Stinger's shares in the corporation to Proto in exchange for specified items from the business' inventory. Stinger promptly obtained all of the inventory items she was entitled to as payment under the agreement. Proto continued the operation of the business through the date of trial.

This action was initiated by Proto filing a complaint against Stinger and James Elliot, Stinger's son-in-law, in the Missoula County Justice Court to recover damages in the sum of $2,550.00 for the conversion of a fur blower and a rug. With regard to the rug the parties told Elliot that he could take a piece of carpet that came with the rented business premises for his own use. The parties disagreed at trial as to whether the carpet was loaned or given to Elliot. Regardless, the carpet was not returned when Proto demanded its return. As to the fur blower, the record discloses that it was owned by either Proto or his mother and was used in the business. At some point Stinger took the blower to a repair shop and did not return it. There was conflicting testimony as to whether Proto knew how to reclaim the blower. Eventually, Stinger reclaimed the blower by paying the repair bill of $11.00. Stinger had possession of the blower at the time of trial.

Both Stinger and Elliot answered Proto's complaint and Stinger counterclaimed for damages for intentional infliction of mental distress, breach of contract and specific performance of the terms and conditions of the parties buy-out contract. The Justice Court entered judgment dismissing Proto's complaint, awarding damages and attorney fees to Stinger and Elliot, and ordering Proto to perform the contract. Proto then appealed to the District Court.

The cause was tried to the District Court sitting without a jury. The District Court dismissed Proto's complaint and entered judgment requiring Stinger to return the fur blower to Proto upon payment of the $11.00 repair bill by Proto, awarding Stinger $3,489.00 in damages for

intentional infliction of mental distress, and awarding Stinger $1,559.00 in attorney fees.

With regard to Stinger's counterclaim for damages for intentional infliction of mental distress, the record discloses that while both parties were involved in the business, Proto was often critical of Stinger and on a daily basis made remarks such as: "I'm going to sue, you're no good, why don't you go home, let me run the store, you can't do anything, you don't deserve any wages, you're time is not worth anything,. . . your customer's not going to accept it, its got to be done over." The record also discloses that Proto made "snide" comments concerning Stinger's work to an employee and once told the employee that he no longer wanted to be in business with Stinger and that he intended to break her. On at least one occasion Proto threatened Stinger with a lawsuit, and on another he called the police when a dispute arose about him removing money from the business. In addition, Proto referred creditors of the Fur Boutique to Stinger after she had transfered her interest to Proto.

Proto also sued a relative of Stinger in an unsuccessful suit, and in the course of the action, commenced by Proto, his cause of action was dismissed by the District Court mid-trial because Proto had no title to the recovery for which he sued.

Testimony as to Stingers resulting mental state is as follows: (1) she had trouble sleeping; (2) she was nervous and suffered lapses of memory; (3) she became afraid to go to the store and at times had her sister accompany her; (4) she was nervous and scared by the presence of Proto; and, (5) she had lost weight and was, at times close to

- 4 -

tears. At no time, however, did Stinger seek psychological or medical assistance.

On appeal Proto raises two issues for our review:

1. Whether the District Court's finding of and award of damages for intentional infliction of severe mental distress was clearly erroneous; and,

2. Whether the District Court's award of attorney fees to Stinger, based on a contract provision securing such fees to the prevailing party in an action to enforce the contract, was appropriate where Stinger's counterclaim for specific performance and damages did not result in a judgment for specific performance, damages or other relief arising in the contract.

In Johnson v. Super Save Markets, Inc. (Mont. 1984), 686 P.2d 209, 213, 41 St.Rep. 1495, 1499-1500, we upheld the award of damages for emotional distress although the tort committed against Johnson involved no physical or mental injury. In Johnson, we said that in such a case we would look to whether the tortious conduct resulted in a substantial invasion of a legally protected interest and caused a significant impact upon the person of the plaintiff.

Moreover, in Johnson, we held that his right to liberty was violated when he was arrested, handcuffed, frisked, booked and charged for issuing a bad check, for which he had made complete restitution six months earlier. In the case at bar, Stinger has demonstrated no substantial invasion of a legally protected interest in the actions of Proto. While his actions toward Stinger were indeed aggravating, none of the actions rise to the level of an actionable tort, even his misguided attempts at litigation. In turn, Stinger does not charge Proto with intentional interference with her

contractual or business relations, but in this case relies instead on her action for specific performance of the March 24, 1982 agreement by which the parties agreed to dissolve their business relationships.

In addition, to sustain an action for the intentional infliction of emotional distress, the authorities are in accord that the mental or emotional distress must be of a severe nature. See Prosser, Law of Torts, § 11 at 51 (3rd ed. 1964); Pakos v. Clark (Or. 1969), 453 P.2d 682; and Roberts v. Saylor (Kan. 1981), 637 P.2d 1175, 1180, the latter case cited by us in Johnson, 686 P.2d at 212, 41 St.Rep. at 1499. The District Court concluded in its findings that Proto had intentionally "inflicted serious emotional distress and anguish upon" Stinger. We will respect that finding, although the denomination of the emotional distress as "serious" may not equate with "severe."

We determine therefore, that the award of damages to Stinger in this case must be reversed insofar as they relate to emotional distress for the reason that the evidence fails to disclose a legally-protected interest invaded by Proto to bring about the severe emotional distress.

Proto next contends the District Court erred in its award of attorney fees to Stinger in the sum of $1,559.00. In addition to her claim for intentional infliction of mental distress, Stinger counterclaimed for specific performance of the parties March 24, 1982, agreement concerning the buy-out of Stinger's interest in the busines by Proto. Clause 10 of that agreement provided:

> That with respect to all of the above-mentioned transactions, both your client and mine will be entitled to the remedy of specific performance and that the prevailing party in any suit to enforce

the above-mentioned activities shall be entitled to reasonable attorneys fees to be set by the court.

The District Court found that Proto demonstrated by his actions and words that he did not intend to comply with the requirements of the parties March 24, 1982 agreement. Accordingly, the District Court ordered that Proto perform all his duties under the agreement. Specifically, the agreement provided that a meeting of shareholders would be held to approve the sale of inventory and corporate shares, that Proto file articles of amendment with respect to the corporation requesting its name be changed, and that Proto obtain a written release of Stinger from any further obligations under the parties' lease of the business premises. The record discloses that Proto failed to perform the above acts required under the contract.

Proto contends that the District Court failed to award relief on Stinger's contract claim and that the evidence does not support such a finding. As stated above, however, the District Court did award relief on Stinger's contract claim by way of specific performance and we hold that there was substantial evidence in the record supporting such relief.

In Montana, with certain narrow and inapplicable exceptions, there is no right to recover attorney fees absent a specific statutory or contractual provision authorizing recovery of such fees. Sliter's v. Lee (1982), 197 Mont. 182, 184, 641 P.2d 475, 476; Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 505, 605 P.2d 1107, 1112. In the instant case the District Court relied on the contractual provision of the parties' March 24, 1982 agreement to award attorney fees and properly limited

Stinger's recovery to the number of hours spent by her attorney in obtaining a judgment for specific performance.

We therefore affirm the District Court's award of attorney fees and reverse the District Court's award of damages for intentional infliction of mental distress. Costs of appeal to Stinger since she is really the prevailing party in this lawsuit.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 8 -