No. 85-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

CARL A. ROWLAND,

        Plaintiff and Appellant,

  -vs-

FORREST L. KLIES,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Small, Hatch, Doubek & Pyfer; Richard J. Pyfer,
Helena, Montana

    For Respondent:

        Poore, Roth & Robinson; Douglas A. Buxbaum, Butte,
Montana

_____

Submitted on Briefs: April 24, 1986

Decided: October 6, 1986

Filed: OCT 6 - 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Carl Rowland appeals a Jefferson County District Court order granting partial summary judgment to the respondent, Forrest Klies. The two issues on appeal are, (1) whether the District Court erred in granting summary judgment to respondent where the Judge previously sitting on this case had denied respondent's motion for summary judgment; and (2) whether the District Court properly entered partial summary judgment in respondent's favor. We affirm.

In the summer of 1979, appellant was camping out in the mountains near Basin, Montana, on the property of his friend, Leon Dolence. Appellant is, and was at that time, suffering from progressive muscular atrophy. Appellant had quit his job in 1978 because of this disability. In the summer of 1979, Dolence told appellant that appellant could build a cabin at any place on Dolence's land and stay there for the rest of his life. During that summer, appellant first met the respondent, Forrest Klies, and they entered into the agreement which gives rise to this appeal. Appellant and respondent orally agreed that respondent would build and furnish a cabin on respondent's land for appellant to live in for the rest of his life. The respondent's land was located very near to Dolence's property. In return, appellant, to the best of his ability, was to prevent people from poaching, trespassing, cutting firewood, and damaging respondent's other cabins on respondent's property. Appellant also stated that he was obligated, when he was able to do so, to check respondent's other cabins in the area. Appellant understood that the respondent would occasionally come and stay with him

2

at appellant's cabin. Appellant states that he fully informed respondent of his disability prior to entering this agreement and that respondent agreed that appellant would fulfill his obligations "to the best of his abilities" knowing that appellant's disability would hamper his physical activities. Upon his agreement with respondent, appellant abandoned his plans to construct a cabin on Dolence's property.

Respondent's version of the agreement is somewhat different from appellant's. Respondent concedes that under the agreement he was to provide a cabin for appellant so long as appellant lived up to his obligations. According to respondent, appellant's obligations were to maintain trespassing signs on respondent's property, keep all trespassers off the property, and periodically inspect respondent's property. The main difference in the parties' versions of the agreement is respondent's assertion that appellant was to maintain trespassing signs on the property. According to respondent, the parties also understood that respondent would occasionally stay in the cabin.

The respondent offered this arrangement to appellant in the summer of 1979. In November or December of 1979, the appellant first moved into a mountain cabin and began living there under the above-described agreement. In November 1979, respondent sold an option to buy to his brother. The respondent wrote out a document embodying the option to buy and in December 1979, he recorded that document with the Jefferson County Clerk and Recorder. The document refers to the agreement between appellant and respondent and states that appellant "has been granted permission to live out his

3

life in a good livable cabin at no charge and not to pay any property taxes on and or house maintenance cost. In turn, Carl Art Rowland will do his best at seeing to it that no one bothers any of" respondent's property.

As stated, appellant moved into a cabin in November 1979, under his agreement with respondent. That cabin had been constructed by respondent and had been sold, with a small lot, to another individual. Apparently with that individual's consent, appellant was to live there until respondent constructed another cabin for appellant to live in. In the spring of 1980, respondent began constructing another cabin for appellant to live in. Appellant began living there in the fall of 1980 and respondent occasionally stayed with him there. In the fall of 1980, appellant and respondent began to have disagreements over the living arrangement. Respondent testified by deposition that appellant simply was not fulfilling his end of the agreement. The parties' differences eventually resulted in appellant signing another agreement in November 1980 which stated that appellant would only stay on respondent's property until July 1981. Appellant testified by deposition that respondent gave him the choice of either immediately leaving the premises or signing the document. In July 1981, appellant vacated the premises.

The second agreement was the result of an incident which had caused a further split between the parties. Both parties agree that appellant told two of respondent's acquaintances that respondent had made very derogatory remarks about them. Respondent denied making the derogatory remarks. Respondent acknowledged that this incident was the

4

reason he asked appellant to vacate the premises. Appellant asserted that he only repeated exactly what respondent had said. Appellant agreed that shortly after this incident the respondent wanted him to leave.

In May 1982, appellant filed his first complaint against respondent. Respondent moved for, and the District Court granted, summary judgment as to all issues of the first complaint except for one count of the complaint which alleged that respondent had negligently damaged appellant's vehicle. In April 1983, appellant filed an amended complaint against respondent which set forth numerous alternative theories of recovery. The amended complaint again alleged that respondent had negligently damaged appellant's vehicle. The remaining eight counts of the amended complaint arose from appellant's agreement with respondent to live on respondent's property. The respondent renewed his motion for summary judgment as to all issues of the amended complaint except that issue alleging that respondent had negligently damaged appellant's vehicle. In December 1983, the Jefferson County District Court, the Honorable Frank M. Davis presiding, denied respondent's motion for summary judgment, stating:

> The Court, in denying Defendant's renewed Motion for a summary judgment, has done so despite a feeling that the Amended Complaint appears to state no new facts -- only the same facts under different legal labels.
>
> All courts are reluctant to summarily deny an aggrieved party of the right to have the merits of his grievances determined by the trier of fact. But he must have facts which the jury can apply to a tenable legal theory.
>
> The only disputed questions of fact in this case are some of the minor ones on the issue of just what the employment

5

> arrangement between the Plaintiff and the Defendant was. There is a genuine issue of fact as to Count V of the original Complaint.
>
> Thus, this case will be set for trial, with the caveat that the Defendant could very possibly be entitled to a directed verdict at the close of the Plaintiff's case.
>
> This Court, as it did in the "life estate" summary judgment, has gone the last mile to keep this Plaintiff in court for equitable reasons. But even equity must be grounded not on sympathy, but on tenable legal principles.

In August 1984, Judge Davis voluntarily recused himself from further proceedings in this case upon appellant's request. In the memorandum to the order recusing himself, Judge Davis stated:

> In withdrawing from this cause, this Judge does not concede that he has in any way prejudged the Plaintiff's case. The record clearly demonstrates otherwise. The formal motion to disqualify for cause is not only untimely under the statute, but it is wholly without merit. Even the certificate of good faith is suspect in light of the record. The disqualification statute has been sorely abused. Nevertheless, this Judge feels that he should not continue to preside where a party has even a groundless feeling that he has been and would be treated unfairly. This Judge feels that to continue to preside would not be in the best interest of either party.
>
> The fact is, this Judge may have committed error already in an effort to keep this Plaintiff in Court, but the wisdom of this decision will have to be decided by another Judge or tribunal.

Subsequently, the Honorable Byron Robb, District Judge, assumed jurisdiction over this case. In January 1985, Judge Robb issued an order "[T]hat plaintiff's counsel shall forthwith complete a proposed pre-trial order which will replace, not supplement, the pleadings herein . . . "

6

(Emphasis added.) For unexplained reasons, the pre-trial order, containing eighteen appellant's contentions and incorporating the contentions set forth in the amended complaint, was drafted to supplement the pleadings, in direct contravention of the January order. In July 1985, the respondent again moved for summary judgment on all claims contained in the amended complaint except that claim alleging that respondent had negligently damaged appellant's vehicle. In August 1985, Judge Robb granted respondent's motion for partial summary judgment. Subsequently, the parties reached an out of court settlement for $1,300 on the one remaining claim, the automobile damage claim, which had survived the summary judgment motion.

The first issue is whether the District Court improperly granted summary judgment where Judge Davis, who had previously sat on this case, had earlier denied a motion for summary judgment. Appellant argues that Judge Davis' ruling denying summary judgment formed "the law of the case" and that Judge Robb abused his discretion in subsequently granting summary judgment. In this regard, this Court has stated:

> "Under the 'law of the case' principle, judges of coordinate jurisdictions sitting in the same court and in the same case may not ordinarily overrule the decisions of each other. It is simply a rule of practice that articulates the sound policy that when an issue is once judicially determined, that should be the end of the matter as far as judges and courts of coordinate jurisdiction are concerned. The 'law of the case' is not an imperative; does not go to the power of the court; and does not mean that a court does not have discretion to reconsider a ruling made by another judge in the same case." (Citations omitted.)

7

Mereness v. Frito-Lay, Inc. (Mont. 1985), 700 P.2d 182, 183-184, 42 St.Rep. 716, 718; quoting State v. Carden (1976), 170 Mont. 437, 440, 555 P.2d 738, 740. In this case, we hold that the District Court did not abuse its discretion simply because it reconsidered Judge Davis' denial of summary judgment and then granted summary judgment. The District Court had additional deposition information upon which to base its order granting summary judgment. In this situation, we find that there was no error under this issue.

The second issue is the propriety of the District Court's granting summary judgment.

> The standard of review is clear. Summary judgment is only proper under Rule 56(c), M.R.Civ.P., where the record discloses that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

Mutual Service Cas. Ins. Co. v. McGehee (Mont. 1985), 711 P.2d 826, 827, 42 St.Rep. 2038, 2039-2040. Using this strict standard, we will examine the eight theories of recovery which were dismissed by the District Court order granting summary judgment. Because the pre-trial order, containing appellant's eighteen contentions, supplemented the pleadings rather than replacing them, it has been a time-consuming chore to fairly summarize the issues raised. We have summarized the claims as: (1) a claim for a violation of the employer-employee relationship; (2) a claim for a violation of § 39-2-303, MCA, which deals with employer deception and misrepresentation; (3) a claim for negligent misrepresentation; (4) a claim for the negligent infliction of mental distress; (5) a claim for a breach of the covenant of good faith and fair dealing; (6) a claim for promissory

8

fraud; (7) a claim for fraudulent misrepresentation; (8) a claim for wrongful interference with peaceful possession of property.

We address the first two claims listed above together as both claims require a finding of an employment relationship. Summary judgment would be proper as to both these claims if, as a matter of law, there was no employment relationship between the appellant and the respondent. In February 1983, after appellant had filed his first complaint but prior to the filing of the amended complaint, appellant filed a sworn affidavit with the Jefferson County District Court Clerk of Court. In that affidavit, appellant swears that he was not "employed" by respondent; that the use of the word "hired" in his complaint was not intended to be defined as hired in the sense of an employer-employee relationship; that he was not hired as an employer hires an employee; that he merely agreed to occupy the cabin and do his best to keep off trespassers and poachers; and that the word hired as used in the complaint did not mean that [respondent] was paying a wage for services rendered by [appellant]. The District Court, in considering this affidavit, stated that it "seems to me to work a fraud upon the court for plaintiff to now claim damages from any sort of employment status." We also question the propriety of allowing appellant to now assert that there was an employment relationship.

> The rule is well established that during the course of litigation a party is not permitted to assume or occupy inconsistent and contradictory positions, and while this rule is frequently referred to as "judicial estoppel," it more properly is a rule which estops a party to play fast-and-loose with the courts . . .

> Although the rule . . . may be regarded as a form of estoppel, it is not strictly one of estoppel, but partakes rather of positive rules of procedure based on manifest justice and, to a greater or lesser degree, on considerations of the orderliness, regularity, and expedition of litigation. . .
>
> . . . those elements such as reliance and injury, or prejudice to the individual, which are generally essential to the operation of equitable estoppel, may not enter into judicial estoppel, at least not to the same extent. . . In order to work a judicial estoppel, the position first assumed must have been taken knowingly and free of inducement by the opposite party.
>
> . . .
> . . . the doctrine of judicial estoppel applies with particular force to admissions or statements made under sanction of oath . . .

31 C.J.S. Estoppel, § 117B, pgs. 623-627, (1964).

Although there is not an abundance of case law on this rule, various courts have employed it. In Hurd v. DiMento & Sullivan (1st Cir. 1971), 440 F.2d 1322, the federal court of appeals held that the plaintiff was estopped from claiming that the defendant attorneys had agreed to represent her. The estoppel was predicated upon the plaintiff's letter written in support of a motion for continuance, that stated that one defendant (a member of the firm) was unable to represent her because of prior commitments. In LaChance v. McKown (Tex.Ct.App. 1983), 649 S.W.2d 658, 660, the court recited the Texas rule on judicial estoppel:

> Judicial estoppel may arise when a person has taken a position or asserted a fact under oath in a judicial proceeding contrary to a position he is taking in the present litigation . . . The rule's purpose is to suppress fraud and prevent abuse of the judicial process by deliberate shifting of positions to suit the exigencies of a particular action,

and it will not be applied when the previous act or statement is uncertain or based on undetermined facts, but only when it is clear and certain. (Citations omitted.)

We agree with the goal stated above.

This Court has stated that, "[t]he rule is that parties are bound by and estopped to controvert admissions in their pleadings." Fey v. A. A. Oil Corporation (1955), 129 Mont. 300, 323, 285 P.2d 578, 590. We find no reason why this rule should not be extended, at least in the peculiar context of this case, to estop a party from controverting admissions in his affidavit. Especially where it appears that appellant is shifting his position on the issue of an employment relationship simply to suit his legal maneuvering at the time. When appellant filed the affidavit, he was advancing a property law theory that respondent had conveyed a life estate in the cabin to him. He apparently disclaimed an employment relationship fearing it would defeat his life estate theory. Appellant changed his position after the District Court rejected the life estate claim, holding such an estate cannot be created orally.

We hold that appellant is estopped from asserting that an employment relationship existed and summary judgment on the first two claims for relief was appropriate.

Appellant's third claim is entitled negligent misrepresentation. We read this long and rambling portion of the complaint as setting forth two separate theories of recovery. The first theory is the tort of negligent misrepresentation, recognized by this Court in Brown v. Merrill Lynch, Pierce, Fenner, Etc. (1982), 197 Mont. 1, 640 P.2d 453. We described that tort as follows:

11

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

Brown, 640 P.2d at 458-459, quoting Restatement (Second) of Torts § 552 (1977).

The appellant has developed no basis upon which to claim that false information was supplied or that the respondent failed to exercise reasonable care or competence in obtaining or communicating information. It is not disputed that the caretaker relationship between the parties deteriorated because of problems that developed subsequent to the original arrangement.

The other possible theory which appellant advances under his claim entitled negligent misrepresentation is a theory of constructive fraud. Appellant, in his claim, uses some of the statutory language defining constructive fraud at § 28-2-406(1), MCA. However, for appellant to succeed on a claim under this section, he must allege and demonstrate a fiduciary relationship between the respondent and himself.

> Constructive fraud is a breach of fiduciary duty. (Citation omitted.) If there is no fiduciary duty in the first place, constructive fraud will not lie.

Morse v. Espeland (Mont. 1985), 696 P.2d 428, 430, 42 St.Rep. 251, 253. Here, there is nothing in the record to show a fiduciary relationship. Instead, appellant and respondent were dealing with each other at arm's length. The District

12

Court properly granted summary judgment on the issue of negligent misrepresentation.

The fourth claim dismissed by summary judgment was a claim for breach of the implied covenant of good faith and fair dealing. Under this claim, appellant alleged that respondent recklessly disregarded the rights of appellant and interfered with appellant's rights to the cabin, all in bad faith.

In the recent case of Nicholson v. United Pacific Ins. Co. (Mont. 1985), 710 P.2d 1342, 42 St.Rep. 1822, this Court articulated its concept of the tort of breach of the implied covenant of good faith and fair dealing. We established that, at least in Montana, the covenant does not arise from every contract and, in fact, is not an obligation arising out of contracts. The covenant does arise out of the justifiable expectations of the parties. One comment in Nicholson is especially relevant here;

> [A] helpful distinction should be noted between an intentional breach or one motivated by self-interest, giving rise to only contract damages, and the action which would give rise to a breach of the implied covenant, resulting in tort damages. Historically, a party to a contract generally had the right to breach and pay damages rather than perform. The non-breaching party, theoretically, is "made whole" from the damages paid following the breach and thus still receives benefits from the agreement.
>
> "Contract law is based in part upon the assumption that certain intentional breaches are to be encouraged. Permitting parties to breach their contracts promotes an efficient economy, at least when the gains from the breach exceed the expected pecuniary injuries of the promise."

13

Nicholson, 710 P.2d at 1348, quoting Diamond, The Tort of Bad Faith Breach of Contract: When, If At All, Should It Be Extended Beyond Insurance Transactions, 64 Marq.L.Rev. 425, 453-454 (1981).

We have carefully examined appellant's 129 page deposition, the respondent's 123 page deposition, the appellant's eighteen contentions in the pre-trial order, the eleven page amended complaint, and various exhibits in the record. This examination persuades us that as a matter of law, respondent's conduct was not the arbitrary, capricious, unreasonable or impermissible activity which, under Nicholson, would justify a claim for breach of the implied covenant. The record shows that respondent provided appellant with a cabin for twenty months; that respondent built a cabin for appellant; that respondent assisted appellant in many ways in living in the mountains; that appellant, because of his disability, was severely restricted in acting as a caretaker; that appellant did not always act in the best interests of respondent; and that respondent gradually grew dissatisfied with his relationship with appellant. The District Court did not err in granting summary judgment on the claim for breach of the implied covenant.

The fifth claim dismissed by summary judgment was appellant's claim for negligent infliction of emotional distress. In Johnson v. Supersave Markets, Inc. (Mont. 1984), 686 P.2d 209, 213, 41 St.Rep. 1495, 1500, this Court addressed the tort of negligent infliction of emotional distress and stated:

14

> [T]his Court adopts the species of case
> approach which requires a factual
> analysis of each case to determine
> whether the alleged "emotional distress"
> merits compensation. In determining
> whether the distress is compensable
> absent a showing of physical or mental
> injury, we will look to whether tortious
> conduct results in a substantial invasion
> of a legally protected interest and
> causes a significant impact upon the
> person of plaintiff.

See also, Proto v. Elliot (Mont. 1986), 722 P.2d 625, 43
St.Rep. 1358.

Here, the record fails to establish a material issue of
fact as to tortious conduct by the defendant, resulting in a
substantial invasion of a legally protected interest and
causing a significant impact upon the plaintiff. In
addition, this issue was previously adjudicated by Judge
Davis.

The District Court also granted summary judgment as to
appellant's claim for fraudulent misrepresentation. In order
to go to the jury on this claim, appellant must make out a
prima facie case of the nine elements of fraud:

> (1) a representation; (2) its falsity;
> (3) its materiality; (4) the speaker's
> knowledge of its falsity or ignorance of
> its truth; (5) the speaker's intent that
> it should be acted upon by the person and
> in the manner reasonably contemplated;
> (6) the hearer's ignorance of its
> falsity; (7) the hearer's reliance upon
> its truth; (8) the right of the hearer to
> rely thereon; and (9) the hearer's
> consequent and proximate injury or
> damage.

Brown v. Merrill Lynch, Pierce, Fenner, Etc. (1982), 197
Mont. 1, 11, 640 P.2d 453, 458. We find that under the
undisputed facts in the record appellant's claim of fraud is
deficient in certain elements cited above. Under these
elements, appellant asserts that respondent falsely

15

represented that appellant would have peaceful possession of the property and that respondent knew that he would not allow appellant peaceful possession. However, appellant's testimony in deposition belies these assertions upon which his claim rests. Appellant's deposition establishes that respondent provided appellant with a cabin in 1979-1980; respondent built a different cabin for appellant in the spring of 1980; appellant understood that respondent would occasionally stay with appellant in the cabin on respondent's land; respondent supplied appellant several times with venison or elk meat; respondent assisted appellant in obtaining a generator for the cabin; appellant did live in a cabin provided by respondent for approximately twenty months; respondent provided appellant with six cords of wood one fall; that respondent and appellant began to have disagreements over appellant's hosting other people at the cabin; and that the relationship deteriorated, and respondent evicted appellant, after appellant told two of respondent's acquaintances that respondent had made derogatory remarks about them.

Appellant's testimony establishes that there was simply a deterioration in the relationship and that respondent did not know, at the time he made the statement, that he would not allow appellant peaceful possession of the property. Because appellant's testimony establishes the _absence_ of various elements of a prima facie case of fraud, the District Court properly granted summary judgment on that claim.

For the same reason, we hold that the District Court properly granted summary judgment on appellant's seventh claim, for promissory fraud. Under this claim, appellant

16

alleges that respondent fraudulently promised him that he would have an exclusive possessory interest in the cabin. Again, appellant's claim is deficient because his own testimony establishes that respondent did not know of the falsity of his representations. Furthermore, "the mere making of a promise which the promisor fails to keep is not actionable fraud." Svennungsen v. Svennungsen (1974), 165 Mont. 161, 169, 527 P.2d 640, 644.

The last claim of appellant which was dismissed by summary judgment is entitled "Wrongful Interference With Peaceful Possession of Property." It is not entirely clear what theory of recovery appellant is advancing under this claim. Paragraph two of this count contends that "plaintiff was entitled to the peaceful enjoyment and possession of said cabin for the term of his employment with the defendant . . . " (Emphasis added.) From that and other contentions, it appears that this count is predicated upon a finding of an employment relationship between appellant and respondent. We have held previously in this decision that the appellant is estopped from successfully alleging an employment relationship. Therefore, the District Court properly granted summary judgment.

In addition, it appears that the appellant's contentions set forth in the pre-trial order were considered by Judge Davis in his March 4, 1983, order granting summary judgment as to all counts in the original complaint except Count V, regarding property damage to appellant's vehicle. Having been the subject of prior adjudication they would be barred under the doctrine of law of the case, which doctrine

17

is not being used in the resolution of this appeal, but which has been strenuously urged by counsel for appellant.

We agree with the following comments made by Judge Robb in granting summary judgment:

1. No valid life estate was created, Judge Davis previously so ruled on an earlier motion for summary judgment, and I concur. Plaintiff's counsel state they are not now pursuing claims on that basis, so the point would seem moot, but yet plaintiff's other claims and theories overlap this in many respects and it is difficult to separate such alleged fact and theory from the other claims.

2. The record indicates no employer-employee relationship was created, at least certainly not in the ordinary sense, and although plaintiff originally claimed there was not, now he does allege an employment status of some sort. This seems grossly inconsistent with plaintiff's affidavit of 2/22/83 filed herein, and seems to me to work a fraud upon the court for plaintiff to now claim damages from any sort of employment status. In any event, if an employer-employee relationship existed at all, it was one terminable at will by either party.

. . .

5. What the record does establish is a very loose, vague and ambiguous oral agreement of the parties, with both claiming the other failed to fulfill his end of it in some respect. The contract consideration appears quite illusory to me as defendant had no way of compelling plaintiff Rowland to stay in the cabin if he chose not to, as that would be involuntary servitude, and if it was not permanently binding on plaintiff, it should not be on defendant. This brings the situation back to one terminable at will by either party, is clearly contractual in nature, and punitive damages would not be recoverable.

6. Plaintiff executed a written resignation or agreement to vacate the premises, and although he argues this was under coercion and he had no choice, the obvious facts do not bear this out. That

is, Rowland certainly could have simply refused to sign such document and sat tight, or he could have sought counsel then or during the additional seven months he lived in the cabin, or much earlier than he did after leaving. He also could have signed a criminal complaint against Klies if defendant in fact threatened him with a gun at some time. Unlike Gates v. Life of Montana, there is no failure or refusal to return the written resignation letter alleged, and a bad faith fact basis does not appear.

7. In summary, plaintiff's numerous claims for emotional distress, negligent misrepresentation, promissory fraud, punitive damages etc. simply are too factually vague, inconsistent, and legally unsound to justify trial, notwithstanding an extensive and persistent effort by his attorney.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

19