No. 96-101

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE MARRIAGE OF

ALAN L. HOOKER,

      Petitioner and Appellant,

  and

DIANE L. HOOKER,

      Respondent and Respondent.

FILED

SEP 12 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and for the County of Garfield,
The Honorable Kenneth R. Wilson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

        Donald R. Herndon, Herndon, Sweeney & Halverson,
        Billings, Montana

      For Respondent:

        J. Reuss, Wright, Tolliver & Guthals,
        Billings, Montana


Submitted on Briefs:   June 27, 1996

Decided:   September 12, 1996

Filed:

_____
Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant Alan L. Hooker appeals from the amended findings of fact, conclusions of law, decree of dissolution, and final order issued by the Sixteenth Judicial District Court, Garfield County. We affirm.

The dispositive issue on appeal is whether Alan should be estopped from challenging the oral property settlement which the District Court incorporated into its final decree of dissolution.

## FACTS

In May 1989, Alan L. Hooker petitioned the District Court for a dissolution of his marriage to Diane L. Hooker. Alan and Diane were married in 1968 and together they operated Hooker Livestock, Inc., a farming and ranching business. Alan's parents (John and Mildred) also operated a farming and ranching operation called the Hooker Cattle Company. Over the years, the operation of Hooker Livestock and Hooker Cattle became commingled and essentially the two companies were operated together. John died in 1975 and when Mildred passed away in 1982 her will provided for equal distribution of Hooker Cattle assets into two trusts--one for her

2

grandchildren and one providing income to Alan during his life with the remainder to her grandchildren. To establish the trusts, it became necessary to value the assets of both ranching operations and eventually the land, cattle, equipment, and cash were divided, which resulted in a determination of the value of Alan's interest in the trust.

The dissolution proceeding was set for trial on April 2, 1991. On the morning of trial, the parties informed the court they were in the process of negotiating a settlement regarding property distribution. Later that day the parties told the court they had reached an agreement. The court convened and the parties read the settlement agreement into the record. Alan and Diane were sworn as witnesses and both of them stated that they understood and agreed to the terms of the property distribution. Both parties agreed to sign the settlement agreement once it was reduced to writing and the District Court requested a copy of the agreement once it was signed. However, subsequent efforts by the parties to reduce the agreement to writing failed and a written agreement was never executed.

On June 4, 1991, Alan moved the District Court to adopt the transcript of the April 2, 1991, proceedings as its findings of fact, conclusions of law, and final decree in the matter. On August 29, 1991, the District Court issued an order stating that the oral stipulation was a contractual obligation between the parties and ordered it to be specifically performed. On October 2,

3

1991, the court entered its findings of fact, conclusions of law, and decree of dissolution stating that the "parties['] property settlement agreement is not unconscionable and is approved by the Court." On the same day, the parties filed a stipulation into the record agreeing that the findings of fact, conclusions of law, and decree of dissolution should be entered.

Over the course of the next two years, the parties proceeded to execute many of the terms of the property settlement agreement. Property was exchanged, titles were signed, and monies were paid. On March 10, 1994, two years and five months after the court had entered its original decree, Alan filed a motion with the District Court to revoke or modify the decree with respect to the property distribution. Following an evidentiary hearing, the District Court entered an order on May 4, 1994, denying Alan's motion to revoke or modify stating that:

> [P]rior to April 2, 1991, and subsequent thereto up to the hearing of April 28, 1994, the parties have voluntarily made exchanges, transfers and agreements which in effect resulted in an almost total performance of the settlement agreement . . . .

In April 1995, Diane filed a motion for leave to file a third-party complaint against the First Trust Company of Montana to resolve the terms of a land transfer associated with the property distribution. On May 4, 1995, the District Court denied Diane's motion and entered an amended decree and final order. In that order the District Court concluded that:

> The Property Settlement Agreement stipulated into the record at the trial of this cause on April 2, 1991, is

4

not unconscionable and is approved by the Court, and is by this reference incorporated herein as is this Court's Order dated May 4, 1994, insofar as it makes any findings or conclusions not inconsistent with this Order.

The court found that:

The stipulation for settlement between the parties which has been approved by this Court has been almost totally performed and the remaining dispute over the land exchange is considered by the Court to be de minimis.

This appeal followed.

## DISCUSSION

The parties addressed the issues of whether the District Court erred in determining that the oral property settlement agreement was not unconscionable and whether the court erred in incorporating the agreement into the amended final decree. However, we determine that the dispositive issue in this case is whether Alan should be estopped from challenging the agreement.

Diane argues that since Alan assented to the agreement in open court and later moved the court to adopt the agreement as its findings of fact and conclusions of law, he should be estopped from challenging the agreement. Diane also argues that Alan should be estopped because the agreement has been substantially performed.

Alan argues that he should not be estopped from challenging the agreement because the District Court did not grant the motion filed by his former counsel to adopt the on-record stipulation as its findings of fact and conclusions of law. Alan also claims that substantial portions of the agreement have not been performed.

5

In its May 4, 1995, final order the District Court found that the property settlement between the parties "has been almost totally performed and the remaining dispute over the land exchange is considered by the Court to be de minimis." The court based its finding on a number of other findings it had made in its May 4, 1994, order which it adopted into the final order.

This Court has stated that if a district court reaches the correct result, its decision will be affirmed regardless of the court's reasoning. Farmers Union Cent. v. Department of Revenue (1995), 272 Mont. 471, 475, 901 P.2d 561, 563. We determine it is not necessary to answer the evidentiary question of whether the parties' settlement agreement has been substantially performed. Instead, we conclude that Alan is judicially estopped from challenging the agreement.

This Court has previously recognized the doctrine of judicial estoppel. See Caekaert v. State Comp. Mut. Ins. Fund (1994), 268 Mont. 105, 885 P.2d 495; Rowland v. Klies (1986), 223 Mont. 360, 726 P.2d 310. Under this doctrine we do not permit litigants to assert inconsistent and contradictory positions in separate litigation. Caekaert, 885 P.2d at 501. The clearest reason for the rule is to prevent parties from playing "fast-and-loose with the courts." Caekaert, 885 P.2d at 501 (citing Rowland, 726 P.2d at 315). To give rise to judicial estoppel, the first representation must have been made knowingly and free from the other party's inducement and it applies particularly to admissions

6

or positions asserted under oath or in previous litigation. Caekaert, 885 P.2d at 501-02 (citing Rowland, 726 P.2d at 315).

In the present case, the record is clear that Alan unequivocally expressed his assent to the stipulation which had been read into the record in open court at the April 2, 1991, hearing. In June 1991, through his counsel, Alan moved the District Court to adopt the on-record stipulation as its findings of fact and conclusions of law. In effect, the court granted the motion in its August 29, 1991, order when it stated that it deemed the stipulation to be a contractual obligation between the parties and ordered it specifically performed through the filing of findings of fact and appropriate decree. In September 1991, the parties stipulated that the findings, conclusions, and decree be entered.

Alan's previous actions in agreeing under oath to the on-record stipulation, his motion requesting the court to adopt the agreement as its findings of fact and conclusions of law, and his stipulation that the decree be entered, all prevent him from now asserting a contrary position.

We therefore hold that Alan is judicially estopped from challenging the oral property settlement agreement which the District Court incorporated into its amended final decree of dissolution.

Affirmed.

_____
Justice

7

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8

September 12, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Donald R. Herndon, Esq.
HERNDON, SWEENEY & HALVERSON, P.C.
Box 80270
Billings MT 59108-0270

J. Reuss
Wright, Tolliver & Guthais
Box 1977
Billings MT 59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _Gallagher_
Deputy