No. 93-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JAMES FIEDLER,
    Plaintiff and Respondent,

vs.

JOSEPH FIEDLER,
    Defendant and Appellant,

and

JOSEPH FIEDLER,
    Plaintiff on Counterclaim and Appellant,

vs.

JAMES FIEDLER AND JUDITH FIEDLER,
    Defendants on Counterclaim and Respondents.

FILED

AUG 11 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Robert T. Cummins and James P. Greenan, Helena,
            Montana

        For Respondent:

            Michael G. Barber and Donald L. Ostrem, Great Falls,
            Montana

Submitted on Briefs:  April 14, 1994

Decided:  August 11, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

James Fiedler brought this action in 1982 for dissolution of a partnership and for an accounting for purposes of distribution. Joseph Fiedler appeals from the Order of the District Court of the Eighth Judicial District, Cascade County, which divided and apportioned real and personal partnership property between him and James Fiedler pursuant to the findings of a Special Master. We affirm.

The issues presented for review are restated as follows:

I.   Did the District Court err in finding that real property located in Montana is a partnership asset?

II.  Did the District Court err in finding that real property located in Wisconsin is a partnership asset?

III. Did the District Court comply with the requirements of Rule 53(e)(2), M.R.Civ.P.?

IV.  Did the District Court err in determining that Joseph and James Fiedler operated the Taylor Ranch Corporation as a part of the partnership?

James and Joseph Fiedler are twin brothers who began a farming and ranching business in approximately 1950, operating as a family partnership under the name of "Fiedler Ranch Partnership." Testimony indicated that other family members were also involved, although all are now deceased. These family members were their older brother, William Frances Fiedler, and their parents, Frank and Katherine Fiedler.

2

The partnership farmed and raised sheep and cattle on properties in Judith Basin County near Stanford, Montana known as the Home Place, the Campbell Ranch, the Vann Ranch, Sleepy Hollow, 160 acres known as the "Isolated 160" and the Taylor Ranch. The Taylor Ranch was purchased with partnership funds in 1954 and was originally formed as a corporation with shares issued to James and Joseph Fiedler and their wives. The Taylor Ranch Corporation has since been dissolved by the Secretary of State and the Fiedler brothers have operated it as part of the partnership. Other property which the brothers inherited from their parents and which is located in Wisconsin has been leased with the income from the leases deposited in partnership accounts and included as income on partnership tax returns.

James and Joseph Fiedler operated the cattle operation together until 1968. Joseph Fiedler has since raised sheep on the Home Place and Sleepy Hollow while James has managed the cattle operation on the remaining properties. Joseph Fiedler testified at trial that he deposited income from the sheep operation in an account in a Lewistown bank under the name of Fiedler Ranch. He also testified that this was a joint account with access by both himself and James Fiedler. James Fiedler testified that he had no knowledge of this account and no documentation was provided relative to this account despite requests from the Special Master appointed by the court.

James Fiedler placed funds derived from the cattle operation primarily in a joint account under the name of Fiedler Ranch

3

Partnership in the Basin State Bank in Stanford, Montana. James Fiedler's cattle operation was extremely successful and the money deposited in this account primarily came from the cattle operation. Both brothers made draws from this account. Testimony provided that in the period from January 1978 up to the time of the trial, Joseph Fiedler withdrew $455,343 from this account, $289,189 more than James Fiedler withdrew.

The relationship between the twin brothers became strained as years passed. In 1982, James Fiedler filed a complaint asking for dissolution of the partnership and an accounting for distribution purposes. Joseph Fiedler filed an answer and a counterclaim also asking for an accounting for distribution purposes. The parties agreed to the appointment of a Special Master to determine the final disposition of the partnership assets. On September 2, 1983, the District Court appointed Jack Stevens as Special Master.

Mr. Stevens was recommended by the appellant Joseph Fiedler and approved by both Joseph and James Fiedler. In preparing his Special Master's Report, Mr. Stevens relied on George Campanella, a Certified Public Accountant who had prepared partnership tax returns for over twenty years as the accountant for the partnership; James Volk, a certified real estate appraiser; and Bass Auction Company, which conducted the equipment appraisals. Mr. Stevens also considered the recommendations of Barry Dutton, a natural resource consultant hired by Joseph Fiedler after Joseph Fiedler disagreed with Mr. Stevens' preliminary findings.

The Special Master was asked to determine equitable

4

distributions of partnership assets. Mr. Stevens proposed two methods for distributing real property and other assets. The first method--preferred by the Special Master and chosen by the District Court--essentially maintained the operations of both brothers and provided additional cash to compensate Joseph Fiedler for the additional real estate apportioned to James Fiedler. The second proposal awarded equal land values to each brother with more cash awarded to James Fiedler.

Mr. Stevens testified that among his reasons for recommending the first proposal were the comparative stewardship abilities of the parties over the preceding twenty years, and he specifically noted James Fiedler's management of the property which created a large amount of assets for the partnership as contrasted to the relatively poor fiscal management of other assets by Joseph Fiedler. Other testimony, including that of a banker who had done business with James Fiedler concerning partnership business for over twenty years, provided that James Fiedler was regarded as a sound financial manager and profitable rancher.

Despite requests, Joseph Fiedler did not provide documentation to the Special Master to support his testimony about his sheep operation. Other evidence presented at trial indicates that James Fiedler has successfully managed the vast majority of the real estate owned by the parties for more than twenty years, that there was no mismanagement on the part of James Fiedler involving any of the partnership assets and that there had been no commingling of partnership and personal assets by James Fiedler as had been

5

alleged by Joseph Fiedler. Testimony also indicated that Joseph Fiedler and his wife Olivia had not filed income tax returns since 1982 and that they might need additional cash to cover their tax liability. This was one of the reasons stated by the District Court to support the adoption of the Special Master's preferred proposal.

Other facts will be provided as necessary throughout this opinion.

## STANDARD OF REVIEW

This case involves a review of findings of fact and conclusions of law. For conclusions of law, the standard of review is whether the district court correctly interpreted the applicable law. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. This Court applies a clearly erroneous standard using a three-part test to review a district court's findings of fact. The Court first reviews the record to determine if the findings are supported by substantial evidence; second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of the evidence; and third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still conclude that a finding is clearly erroneous when a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. Substantial evidence is defined as "evidence that a reasonable mind

6

might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Barrett v. Asarco, Inc. (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080.

## Issue I: Montana Real Property

Did the District Court err in finding that real property located in Montana is a partnership asset?

Joseph Fiedler contends that the real property located in Montana is and has always been held as tenants in common. He further contends that all real properties owned by the parties-- with the exception of the Taylor Ranch--were acquired by various family members prior to 1950, the date James Fiedler has alleged as the time the partnership was created between James and Joseph Fiedler. According to Joseph Fiedler's arguments on appeal, no real property is held in the name of the partnership, no written partnership agreement has ever existed between James and Joseph Fiedler, and the Fiedler brothers never intended to convey real property held as tenants in common to the partnership. Thus, Joseph Fiedler contends that the District Court erred in relying on In the Matter of the Estate of Palmer (1985), 218 Mont. 285, 708 P.2d 242, to determine that James and Joseph Fiedler intended to operate the ranch lands as part of a partnership and in distributing such as partnership property.

James Fiedler counters that Joseph Fiedler has maintained since the beginning of this proceeding that all real property owned and operated in Montana for farming and ranching purposes was partnership property and that he is barred by principles of

7

judicial estoppel from now contending otherwise on appeal. We agree.

Clearly standing out among the numerous instances in which Joseph Fiedler has previously asserted or maintained that the property is partnership property are the following:

1. "Defendant JOSEPH FIEDLER has filed extensive counterclaims against Plaintiff JAMES FIEDLER alleging that JAMES FIEDLER has mismanaged the partnership assets; . . . failed to maintain the buildings and lands of the partnership; breached his fiduciary duty by mismanaging partnership lands . . ." (From Motion of Defendant and Counter-Plaintiff Joseph Fiedler to add Judith Fiedler as a Defendant to the Counterclaims)

2. "The Fiedler Ranch Partnership comprises a number of tracts of land totalling approximately 9254 acres." (From Joseph Fiedler's response to the Preliminary Report of the Special Master)

3. "Plaintiff's motion envisions an eventual partition pursuant to MCA Title 70, Ch. 29. That chapter is irrelevant to partnership actions. By its own terms, section 70-29-101 applies only to situations 'when several cotenants hold or are in possession of real property as joint tenants or as tenants in common.' Plaintiff's complaint herein did not seek relief in partition. More accurately, it sought dissolution and winding up of a partnership, under MCA Title 35, Ch. 10. Section 35-10-502 makes it clear that partners hold partnership property as 'tenants in partnership', not as tenants in common or as joint tenants, and the statutory system for dissolving and winding up the affairs of a partnership is very different from that of an ordinary partition." (Joseph Fiedler's objection to James Fiedler's Motion for a Title Report, acquiesced in and relied on subsequently by James Fiedler) (Emphasis in original.)

James Fiedler also stipulated--pursuant to Joseph Fiedler's argument that the property was held as a tenancy in partnership--to withdraw his claim for partition and for payment for services provided to the partnership. At all times subsequent to James Fiedler's withdrawal of these claims, James Fiedler has taken the

8

position previously argued by Joseph Fiedler that the property was held as a tenancy in partnership.

The doctrine of judicial estoppel binds a party to his or her judicial declarations, and precludes a party from taking a position inconsistent with them in a subsequent action or proceeding. Trader's State Bank of Poplar v. Mann (1993), 258 Mont. 226, 242, 852 P.2d 604, 614. This Court has applied the doctrine to estop a party from controverting admissions in the party's pleadings and to estop a party from controverting admissions in an affidavit. Rowland v. Klies (1986), 223 Mont. 360, 368, 726 P.2d 310, 316 (citing Fey v. A.A. Oil Corp (1955), 129 Mont. 300, 323, 285 P.2d 578, 590). Stated simply, it is a rule which "estops a party to play fast-and-loose with the courts." Rowland, 726 P.2d at 315 (citing 31 C.J.S. Estoppel, § 117B (1964)). Just as surely, the doctrine is applicable in this case where a party cannot take the opposing viewpoint when he has induced another to stipulate to his position and drop his arguments for that opposing position.

The elements of judicial estoppel are:

1) the estopped party must have knowledge of the facts at the time the original position is taken;

2) the party must have succeeded in maintaining the original position;

3) the position presently taken must be actually inconsistent with the original position; and

4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party.

Mann, 852 P.2d at 614. Throughout the lengthy duration of this litigation and until he presented evidence at trial to argue that

9

the properties were held as tenancies in common, Joseph Fiedler has consistently maintained that the properties involved in this action are partnership properties.

There is nothing in the record to indicate that Joseph Fiedler did not have knowledge of all the facts at the time he took his original position and clearly he succeeded in maintaining that position. This position was taken early on in the litigation and James Fiedler stipulated to this position at that time. Clearly, all the elements for judicial estoppel are present and Joseph Fiedler cannot now argue that this should be an action in partition of real property and not a partnership dissolution proceeding. Further, Joseph Fiedler maintained early on in this proceeding that all five Fiedlers operated as a family partnership prior to their deaths. We conclude that Joseph Fiedler is judicially estopped from changing his position concerning this property.

Further, he has made no cogent argument for not applying Palmer to the facts of this case to determine that the real property is held by James and Joseph Fiedler as tenancies in partnership. Palmer held that property acquired either before or after formation of a partnership may be considered partnership property despite the appearance of another form of ownership. Palmer, 708 P.2d at 249.

We hold the District Court correctly determined that the real property located in Montana is a partnership asset.

### Issue II: Wisconsin Real Property

Did the District Court err in finding that real property located in Wisconsin is a partnership asset?

10

The parties own several tracts of real property in Wisconsin (the Wisconsin properties). The District Court included the Wisconsin properties along with other assets as partnership property to be distributed to the parties. James Fiedler has managed the Wisconsin properties and deposited income from them in partnership bank accounts.

This income has been included on partnership tax returns as well. George Campanella testified that copies of partnership tax returns were provided to Joseph Fiedler and presented evidence of that for several years. Joseph Fiedler did not challenge this during the years of James Fiedler's management of this property nor has he made a persuasive argument that the Wisconsin properties are not partnership property.

Joseph Fiedler contends that the Wisconsin properties are not subject to the jurisdiction of the District Court and that the deposit of funds from the rentals of the Wisconsin properties in the Montana bank account and James Fiedler's reporting of the lease income as partnership income does not constitute sufficient evidence to overcome a prima facie assumption that the ownership is that of tenants in common. These arguments are inapposite.

It is immaterial that the District Court does not have jurisdiction over the real property in Wisconsin. In October 1988, the parties stipulated that the Special Master would associate counsel in Wisconsin to conclude the probate of the Estate of Frank Fiedler, list the property for sale after appraisal under the supervision of the Special Master, and then deposit the net

11

proceeds of the sale of the Wisconsin properties in the Special Master Interest Bearing Account until a court-ordered division and disbursement of the proceeds was ordered.

This stipulation to have the Special Master convert the property to cash for distribution as directed by the District Court was agreed to in October 1988--more than four years before the trial. Joseph Fiedler did not object to including the Wisconsin properties as part of the trial. He further did not object to the District Court's inclusion of them in the Order Appointing the Special Master or the Preliminary or Final Special Master's Report's discussion of them. He in fact included the Wisconsin properties in his own Counterclaim and other motions. He waited until just before trial to mention that the Wisconsin properties were improperly included in this proceeding and then agreed that the property should be included. He did not object until the Special Master's report was being considered by the Court.

As part of the Special Master's proposal adopted by the District Court, the proceeds of the sale of the Wisconsin properties are to be distributed to Joseph Fiedler. His argument relating to the fact that the property has not yet been sold is meritless. As noted above, Joseph Fiedler stipulated in 1988 to the procedures to be followed concerning this property. Moreover, by stipulating to this procedure, Joseph Fiedler waived any future argument to treat the matter differently absent allegations to support setting aside or relief from the stipulation.

The purpose of a stipulation is to relieve the parties from

12

the necessity of introducing evidence about the ultimate fact covered by it. Webb v. Wolfe (1988), 230 Mont. 322, 325, 749 P.2d 531, 532. If the stipulation is material, the parties and the court are bound by it. Webb, 749 P.2d at 532. See also Myers v. Department of Agriculture (1988), 232 Mont. 286, 289, 756 P.2d 1144, 1146. We conclude that Joseph Fiedler is bound by his stipulation made in 1988 concerning the Wisconsin properties.

In addition to the stipulation that the Special Master would handle sale and distribution of the Wisconsin properties, substantial evidence was presented to support the District Court's finding that the Wisconsin properties were partnership assets. This included testimony that the income from the property was included in partnership tax returns and that Joseph Fiedler did not object to this inclusion of income over a period of more than twenty years. This property was managed by James Fiedler. Joseph Fiedler also testified that he was advised by his attorney handling a 1976 IRS problem that he should leave the management of the partnership to James Fiedler. This and other evidence constitutes substantial evidence according to the DeSaye test.

We hold the District Court properly determined that real property located in Wisconsin is a partnership asset.

### Issue III: The Special Master's Report

Did the Special Master's Report comply with the requirements of Rule 53, M.R.Civ.P?

Joseph Fiedler contends that he was deprived of rights arising under Rule 53, M.R.Civ.P., because he was not allowed to examine and challenge the Special Master's report until it was accepted

13

into evidence during the presentation of the plaintiff's case at trial. He now claims that the Special Master substantially exceeded the authority given to him by the District Court and that the report is based on incorrect conclusions that a partnership existed between the parties and that the real property owned by James and Joseph Fiedler was owned as tenancies in partnership. He claims this distorts and invalidates the recommendations made by the Special Master concerning assignments of income and proposals for division of assets.

Joseph Fiedler's argument on this issue is basically a reargument of the position he argued at the trial. In substance, it is an argument that the District Court erred in adopting the Special Master's findings. Rule 53(e)(2), M.R.Civ.P., states that the trial court shall accept the master's findings of fact unless they are clearly erroneous. This contention is addressed in Issue IV below.

As to the opportunity to be heard prior to trial concerning the Special Master's report, this too is a meritless argument. James Fiedler filed a Motion for Hearing in October 1992, the month before the trial, to discuss the adoption of the Special Master's report. Joseph Fiedler objected to this motion, stating:

> [A] hearing on this matter before the trial setting is premature and would be duplicative of the matters to be presented at the trial which is scheduled to commence before this Court on the 16th day of November, 1992, for a period of one week at which time the Court will determine whether or not or how much, if any, of the Master's Report will be utilized.

Moreover, Joseph Fiedler had ample opportunity to respond to the

14

Special Master's preliminary report and in fact filed an Opposition to Plaintiff's Motion for Adoption of Special Master's Preliminary Report as Final Report and later filed an Objection to the Special Master's Report following the conclusion of the trial. He also challenged specific findings of the Special Master's Report several times before the trial and, as stated above, refused a hearing on the report in the weeks prior to the trial. To argue now that he was prejudiced in light of this conduct is utterly without merit.

We hold the District Court allowed Joseph Fiedler to respond to the Special Master's Report in accordance with the requirements of Rule 53(e)(2), M.R.Civ.P.

### Issue IV:   Findings

Did the District Court err in determining that Joseph and James Fiedler operated the Taylor Ranch Corporation as a part of the partnership?

Joseph Fiedler's lengthy argument on this issue is essentially an argument that the District Court erroneously converted this from an action in partition to an action to dissolve a partnership. He has not identified any specific findings which he claims are incorrect, but he argues the District Court erred in determining there was a partnership. We addressed the findings which deal with the inclusion of real property as partnership assets in Issues I and II above. We also affirm the findings of the District Court on this issue as discussed briefly below.

Interestingly, in his response to the Preliminary Report of the Special Master, Joseph Fiedler stated:

> In approximately 1950, Joseph Fiedler, James Fiedler,
> their brother William . . . and their parents . . .,

15

> commenced conducting a general ranching and farming partnership business on land jointly owned by the family, hereinafter referred to as the Fiedler Ranch . . . Upon the death of the brother and parents, Joseph and James became 50-50 partners with all profits to be split evenly.

This is but one of the numerous examples in the voluminous record of this action encompassing over ten years of litigation by which Joseph Fiedler has indicated his knowledge and belief that the Fiedler Ranch has been operated as a partnership. Not only has he supported his arguments over the years with information indicative of a partnership between James and Joseph Fiedler, he has also supported them with information indicative of a partnership between all five members of the Fiedler family going as far back as 1950.

Substantial evidence supports a finding that the Taylor Ranch Corporation was purchased in 1954 by the partnership with partnership assets derived from the sale of partnership livestock. Based on the Special Master's findings and conclusions, the evidence presented at trial and other contents of the record in this case, the District Court found specifically that James and Joseph Fiedler intended to operate the ranch they inherited, and all additions to it, as a partnership; that there was no intention by them to have any of the property withheld from the partnership; and that the Special Master had relied upon qualified appraisers and sound techniques. Rule 53(e)(2), M.R.Civ.P., states that a trial court sitting without a jury "shall accept the master's findings of fact unless clearly erroneous." The District Court concluded that the Special Master's report contained nothing which was clearly erroneous. We agree.

16

After reviewing the record, we conclude that the findings above-noted and others not specified herein are indeed supported by substantial evidence. Further, after reviewing the record, we conclude that the District Court has not misapprehended the effect of the evidence, and our review of the record has not left us with a definite and firm conviction that a mistake has been made.

We hold the District Court properly determined that Joseph and James Fiedler operated the Taylor Ranch Corporation as a part of the partnership.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

17

August 11, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

ROBERT T. CUMMINS and JAMES P. GREENAN
Attorneys at Law
One North Last Chance Gulch
Helena, MT  59601

MICHAEL G. BARER, ESQ.
Attorney at Law
P.O. Box 3153
Great Falls, MT 59403-3153

Donald L. Ostrom
Attorney At Law
18 Sixth Street North #200
Great Falls MT 59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy