No. 96-636

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

RICHARD M. BASKETT and KATHLEEN T. BASKETT,

　　　　Plaintiffs and Respondents,

　　v.

RONALD W. GOLDAMMER, d/b/a GOLDAMMER
CONSTRUCTION & DESIGN,

　　　　Defendant and Appellant.

　　and

WILLIAM HOFF, d/b/a CUSTOM CABINETS UNLIMITED,

　　　　Plaintiff and Respondent,

　　v.

RONALD W. GOLDAMMER, d/b/a GOLDAMMER
CONSTRUCTION AND DESIGN, and RICHARD M. BASKETT
and KATHLEEN T. BASKETT, Husband and Wife,

　　　　Defendants and Respondents.

FILED

MAR 25 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:　District Court of the Fourth Judicial District,
　　　　　　　In and for the County of Missoula,
　　　　　　　The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Don Torgenrud; Attorney at Law;
　　　　　　St. Ignatius, Montana

　　　　For Respondents:

　　　　　　Milton Datsopoulos; Datsopoulos, MacDonald
　　　　　　& Lind; Missoula, Montana

Submitted on Briefs: February 20, 1997

Decided: March 25, 1997

Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Richard and Kathleen Baskett filed a motion in the Fourth Judicial District Court, Missoula County, for an order entering judgment pursuant to the settlement agreement. On August 15, 1996, after hearing testimony, the Fourth Judicial District Court entered its order granting the Basketts' motion, ordering Goldammer to remove his construction lien, and dismissing the case with prejudice. Goldammer appeals. We affirm.

The issues on appeal are:

1.    Was the settlement agreement an agreement for arbitration under the Montana Uniform Arbitration Act, §§ 27-5-101 through -324, MCA?

2.    If the settlement agreement was not a formal agreement for arbitration under the Montana Uniform Arbitration Act, did the District Court err in concluding that the agreement was properly executed and awarding judgment in favor of the Basketts?

FACTUAL BACKGROUND

In 1991, the Basketts purchased a house in Missoula and entered into a written contract with Goldammer by which Goldammer agreed to renovate the home. The Basketts originally intended to

2

remodel the home and sell it for a profit or keep the property as a rental home. The written contract provided that the renovations would be completed in accordance with the detailed specifications for a fixed sum of $35,000. During the performance of the original contract the Basketts decided they wanted to live in the home after the construction was completed. They therefore requested upgraded materials and additional work to be completed by Goldammer.

The additional changes were not reduced to writing but were agreed upon orally by the Basketts and Goldammer. As the work progressed, disagreements arose between the parties involving what items of construction had been completed, the value of the extra work completed, and which items of work could be credited to the original written contract. The Basketts prepared a proposed written change order and submitted it to Goldammer. In response to this change order, Goldammer submitted a proposal to the Basketts. The proposal was rejected by the Basketts as it proposed a change from a fixed contract price to a time and materials contract.

On November 27, 1991, Goldammer advised the Basketts that the job would cost at least $87,000, and that figure did not include several thousands of dollars of bills he anticipated from subcontractors. The Basketts had a meeting with Goldammer on November 29, 1991, and advised him that any additional payments they made would have to be jointly made to subcontractors and himself since the figures he provided showed substantial sums unpaid to subcontractors. Goldammer stated he could not complete the job under those circumstances and performed no additional work.

3

The Basketts hired another builder and retained Goldammer's work crew to complete the work. On December 19, 1991, Goldammer filed a construction lien on the Basketts' property for amounts allegedly owed by the Basketts. The Basketts brought suit to require Goldammer to remove the lien and Goldammer countersued. One of the subcontractors, William Hoff, d/b/a Custom Cabinets Unlimited, brought suit against Goldammer and the Basketts. The suit by Hoff was dismissed with the subcontractor assigning his claim to the Basketts.

The parties then participated in several settlement conferences. Eventually, the Basketts offered to Goldammer that they jointly employ an architect to make the determination of how much of the final project consisted of work that was provided by the contract, and how much consisted of work attributable to changes to the contract. The Basketts further offered that if the architect determined that any amount was owed by them to Goldammer, they would pay that amount and, on the other hand, if the architect determined that the Basketts had paid more than what was required of them, Goldammer would not have to pay the Basketts, but would be required only to remove his construction lien. This offer was reduced to a settlement agreement entered into by both parties. The settlement agreement provided that a Missoula-based architect, Eric Hefty, was to be employed to complete the terms of the agreement. On July 6, 1995, the District Court entered an order approving the parties' agreement and requiring that the parties

4

complete the agreement and report back to the court within thirty days of the architect's report.

The parties had the opportunity to meet with Hefty, discuss the work that had been completed, and answer any questions Hefty had. Hefty issued his report on October 20, 1995, which recommended that the construction lien be released. This report was supplemented by his report on November 3, 1995, in which Hefty included certain additional amounts that had been paid by the Basketts, showing that their total payments exceeded the amounts claimed by Goldammer. Hefty issued a third and final report on February 29, 1996, which affirmed his earlier reports.

On July 29, 1996, the District Court held an evidentiary hearing and heard testimony from Eric Hefty, George Bingham, an expert witness for Goldammer, and from Goldammer himself. Upon considering the evidence and testimony presented, and the briefs filed by the parties, the District Court entered its order granting the Basketts' motion and entered judgment in favor of the Basketts, and required Goldammer to remove his construction lien. Goldammer appeals this order.

## ISSUE 1

Was the settlement agreement an agreement for arbitration under the Montana Uniform Arbitration Act, §§ 27-5-101 through -324, MCA?

Goldammer asserts that the District Court abused its discretion in confirming the arbitrator's award and in failing to find and conclude that the arbitrator exceeded his powers granted

5

Goldammer fails to base his assertions upon the determination of the District Court to enforce the terms of the settlement agreement, and instead asserts that he is not bound by the results of the arbitration conducted by the architect. The settlement agreement was not drafted pursuant to the arbitration requirements under the Montana Uniform Arbitration Act. The judgment was not entered by Hefty but by the District Court. Goldammer's appeal of Hefty's determination is misplaced, as no formal arbitration pursuant to the Montana Uniform Arbitration Act was conducted.

## ISSUE 2

If the settlement agreement was not a formal agreement for arbitration, did the District Court err in concluding that the agreement was properly executed and awarding judgment in favor of the Basketts?

The District Court did not clearly define the architect's role as an arbitrator or master. The parties and the court referred to Hefty both as a arbitrator and a settlement master. An overview of the facts and procedure followed, however, seem to best correspond to those of a master. We therefore review the District Court's actions in approving the master's report and concluding that the agreement was properly executed under the standards of review for Rule 53, M.R.Civ.P., which sets forth the authority of a master and the procedures to be followed by the trial court and the master.

A review of the District Court's order demonstrates that the District Court did consider the master's findings set forth in his report in light of the settlement agreement's terms. Rule

7

53(e)(2), M.R.Civ.P., states that the trial court shall accept the master's findings of fact unless they are clearly erroneous.

At the hearing on the master's report, Goldammer contended that Hefty inappropriately relied upon the market value of the house in making his findings and therefore exceeded the scope of his authority. Goldammer raises this issue again on appeal and argues that the District Court incorrectly determined that Hefty did not rely on a market value analysis. Hefty testified at the hearing that he did not rely upon a market value analysis in reaching his final determination. Goldammer also contends on appeal that the District Court did not consider the testimony of his expert witness, Bingham, as to Hefty's possible reliance on a market value analysis. The District Court made a specific finding that Hefty relied upon market value only for informational purposes and did not use market value in determining the value of the change orders provided to the Basketts. This finding is supported by substantial evidence in the record. This Court will not substitute its judgment for that of the trial court when the issue relates to the credibility of the witness or the weight given to certain evidence. *Wunderlich v. Lumbermens Mut. Cas. Co.* (1995), 270 Mont. 404, 409, 892 P.2d 563, 566.

Absent any clear error, the master's findings of fact were properly accepted by the District Court. *See Fiedler v. Fiedler* (1994), 266 Mont. 133, 879 P.2d 675. The District Court did not find that the master's report contained anything clearly erroneous

and therefore correctly concluded that the settlement agreement was binding upon the parties and should be enforced. Although the District Court erred by not following all of the procedures outlined in Rule 53, M.R.Civ.P., we conclude that the error was harmless and does not warrant reversal as it did not materially affect the rights of the party. *In re Marriage of Dreesbach* (1994), 265 Mont. 216, 226, 875 P.2d 1018, 1024.

After reviewing the record we determine that the District Court's finding that the settlement agreement was complied with was supported by substantial evidence in the record. Furthermore, we determine that the District Court has not misapprehended the effect of the evidence, and our review of the record has not left us with a definite and firm conviction that a mistake has been made. *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287.

We affirm.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices

9