No. 00-603

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 238

ELIZABETH KAUFFMAN-HARMON and REBECCA KAUFFMAN-PIOTROWSKI,

on behalf of all shareholders of Kauffman Land & Livestock, a Montana corporation,

Plaintiffs and Appellants,

v.

DAVID V. KAUFFMAN, JR., individually, KAUFFMAN LAND & LIVESTOCK,

a Montana corporation; and DAVID V. KAUFFMAN, SR., and RUTH E. KAUFFMAN,

jointly and severally,

Defendants and Respondents,

and

DAVID V. KAUFFMAN, JR., individually,

Third-Party Plaintiff,

v.

KAUFFMAN LAND & LIVESTOCK, a Montana corporation,

Third-Party Defendant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Bradley D. Dantic, Worden, Thane & Haines, Missoula, Montana

For Respondent David V. Kauffman, Jr.:

Paul A. Sandry, Warden, Christianson, Johnson & Berg, Kalispell, Montana

For Respondents David V. Kauffman, Sr., and Ruth E. Kauffman:

James C. Bartlett, Attorney at Law, Kalispell, Montana

Submitted on Briefs: March 7, 2001

Decided: December 3, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Elizabeth Kauffman-Harmon and Rebecca Kauffman-Piotrowski (hereinafter "Elizabeth and Rebecca") appeal from the Findings of Fact, Conclusions of Law and Order issued by the Eleventh Judicial District, Flathead County on June 16, 2000.

¶2 Although the appellants present seven issues on appeal, we find one issue dispositive: Do principles of equity, such as judicial estoppel and the clean hands doctrine, prevent Dr. David V. Kauffman, Sr., and Ruth E. Kauffman from claiming the corporation's assets and stock are held in resulting and constructive trusts?

¶3 We reverse and remand for further proceedings.

## BACKGROUND

¶4 Kauffman Land and Livestock is a family controlled and operated corporation which has been in existence for approximately 25 years. The four children of Dr. David V. Kauffman, Sr. (hereinafter "Dr. Kauffman"), and Ruth E. Kauffman (hereinafter "Mrs. Kauffman") each own 25% of the stock of the corporation. The four shareholders are David V. Kauffman, Jr. (hereinafter "David"), Stephen L. Kauffman (hereinafter "Stephen"), Elizabeth and Rebecca.

¶5 Dr. and Mrs. Kauffman have resided in Flathead County since the 1960's when Dr. Kauffman established a medical practice there. Dr. and Mrs. Kauffman acquired several pieces of real property in the Flathead Valley over the years while Dr. Kauffman was practicing medicine. In 1975, Dr. and Mrs. Kauffman consulted an attorney, John Lence, regarding their business affairs and estate planning. After reviewing their assets, Lence informed them that they faced severe estate tax consequences if they wished to transfer assets to their children upon their death. Lence recommended the formation of a corporation as the simplest and best estate plan and the best vehicle to preserve the estate. He indicated that they could transfer their assets to the corporation, receive shares of stock, and then gift the shares of stock to their children to avoid estate taxes.

¶6 Dr. and Mrs. Kauffman formed the corporation entitled Kauffman Land and Livestock on or about January 19, 1976, and transferred several large pieces of real property to the corporation. In consideration for the assets, the corporation issued 10,000 shares of common stock to Dr. Kauffman and 10,000 shares of common stock to Mrs. Kauffman. The corporation's business activities consisted of farming, ranching, grazing and real estate rental. The corporation was primarily formed to preserve Dr. and Mrs. Kauffman's assets from possible future creditors since Dr. Kauffman did not carry medical malpractice insurance and to serve as estate planning vehicle through which estate taxes could be minimized.

¶7 In 1986, Dr. Kauffman faced two medical malpractice lawsuits. In one of the cases, a judgment was entered for approximately $50,000 against Dr. Kauffman. Shortly thereafter, while on a family ski vacation, Dr. Kauffman voluntarily gifted to Mrs. Kauffman all of his shares of the corporation's stock. The paperwork was backdated so that it appeared that the stock transfer occurred significantly prior to the 1986 judgment. During a subsequent debtor's examination hearing relating to the judgment, Dr. Kauffman testified that he had no rights or interest in the corporation and no substantial assets in his

control or ownership. Based upon Dr. Kauffman's testimony, the tort victims and their attorney concluded that there were no assets to execute on to satisfy the judgment.

¶8 After Dr. Kauffman's stock transfer to Mrs. Kauffman, Mrs. Kauffman gifted her full stock in the corporation to her children over a number of years. Currently, each of the four children owns one-quarter of the stock and has served as one of four directors. Mrs. Kauffman acknowledged that she knowingly and voluntarily gifted the stock to her children and did not place any conditions, restrictions or limitations on her children's stock ownership.

¶9 A dispute arose among the shareholders regarding management of the corporate properties and the amount of debt owed to David by the corporation. On July 10, 1998, Elizabeth and Rebecca instituted a shareholder derivative action and petitioned the court for judicial review and determination of the following: the debt owed to David, the fair and appropriate method of payment of the debt, whether David committed a breach of his fiduciary duties, whether David should be removed as an officer and director of the corporation, and a resolution of the shareholders' deadlock. After the case commenced, David called a special meeting of the board of directors to issue additional stock to himself and a transfer of certain corporate properties to his parents. Elizabeth and Rebecca objected. Subsequently, the District Court issued a temporary restraining order and preliminary injunction to enjoin the issuance of stock to David and the transfer of corporate assets to Dr. and Mrs. Kauffman.

¶10 On July 28, 1999, Elizabeth and Rebecca filed a second amended petition which included a request that the court set aside the transfer of certain corporate property to Dr. and Mrs. Kauffman. On September 8, 1999, David responded and also filed a third party complaint against the corporation seeking payment of his debt. On October 27, 1999, Dr. and Mrs. Kauffman filed a responsive pleading, which was amended on December 1, 1999, to allege that the corporation's assets and stock were held in a resulting or constructive trust. Dr. and Mrs. Kauffman also filed a motion to bifurcate the trial requesting that the court order a separate trial solely on their claims. David supported the motion; however, Elizabeth and Rebecca opposed the motion. The court bifurcated the trial and Dr. and Mrs. Kauffman's claims were tried by the court sitting without a jury. On June 16, 2000, the District Court issued its Findings of Fact, Conclusions of Law and Order in which it concluded that the transfers of assets and shares of stock by Dr. and Mrs. Kauffman created a resulting trust and a constructive trust and ordered that the corporation's assets and stock be conveyed to Dr. and Mrs. Kauffman. Elizabeth and

Rebecca appeal from the order bifurcating the trial and the court's conclusion that resulting and constructive trusts were created.

## STANDARD OF REVIEW

¶11 Dr. and Mrs. Kauffman's claims involving the existence of resulting and constructive trusts are claims in equity. *See* § 72-33-218, MCA, and § 72-33-219, MCA. Therefore, in reviewing this matter, we are guided by § 3-2-204(5), MCA, which requires that in equity cases and in matters of an equitable nature, we review "all questions of fact arising upon the evidence presented in the record. . . ." In reviewing the findings of fact, we determine if the court's findings are clearly erroneous; and, in reviewing the conclusions of law, we determine if the court's interpretation of the law is correct. *Hansen v. 75 Ranch Co.*, 1998 MT 77, ¶ 20, 288 Mont. 310, ¶ 20, 957 P.2d 32, ¶ 20 (citations omitted). Further, this Court, sitting in equity, is empowered to determine all questions involved in the case and to do complete justice, including the power to fashion equitable results. *Blaine Bank of Montana v. Haugen* (1993), 260 Mont. 29, 35, 858 P.2d 14, 18 (citation omitted).

## DISCUSSION

¶12 Do principles of equity, such as judicial estoppel and the clean hands doctrine, prevent Dr. David V. Kauffman, Sr., and Ruth E. Kauffman from claiming the corporation's assets and stock are held in resulting and constructive trusts?

¶13 Elizabeth and Rebecca argue that Dr. and Mrs. Kauffman are barred from claiming that resulting and constructive trusts exist pursuant to equitable principles of judicial estoppel and the unclean hands doctrine. We have consistently recognized a fundamental principle of equitable jurisprudence that one who seeks equity must do equity. *See Hall v. Lommasson* (1942), 113 Mont. 272, 124 P.2d 694. Consequently, we must first address Elizabeth and Rebecca's equitable arguments before we can ascertain whether resulting and constructive trusts were created.

¶14 Elizabeth and Rebecca first argue that Dr. and Mrs. Kauffman should be barred from their claims under the long-recognized equitable doctrine of judicial estoppel. We agree in part, whereas we find that Dr. Kauffman is barred by judicial estoppel from raising his claims that resulting and constructive trusts exist. However, no evidence was presented to indicate that Mrs. Kauffman's claim should be barred by the doctrine of judicial estoppel, as the evidence does not establish that Mrs. Kauffman made a past judicial statement

contradicting her current claim.

¶15 The fundamental purpose of judicial estoppel is to protect the integrity of the judicial system and thus to estop a party from playing "fast and loose" with the court system. *See Fiedler v. Fiedler* (1994), 266 Mont. 133, 140, 879 P.2d 675, 679 (citations omitted). Hence, the doctrine of judicial estoppel binds a party to his or her judicial declarations, and precludes a party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding. *Fiedler*, 266 Mont. at 139, 879 P.2d at 679 (citation omitted). *See also In re Raymond W. George Trust,* 1999 MT 223, ¶ 51, 296 Mont. 56, ¶ 51, 986 P.2d 427, ¶ 51. Although judicial estoppel may be regarded as a form of estoppel, "it is not strictly one of estoppel, but partakes rather of positive rules of procedure based on manifest justice and, to a greater or lesser degree, on considerations of the orderliness, regularity, and expedition of litigation", and "those elements such as reliance and injury, or prejudice to the individual, which are generally essential to the operation of equitable estoppel, may not enter into judicial estoppel, at least not to the same extent". *Rowland v. Klies* (1986), 223 Mont. 360, 367, 726 P.2d 310, 315 (quoting 31 C.J.S. Estoppel, § 117B, pp. 623-627 (1964)).

¶16 A party claiming that judicial estoppel bars another party from re-litigating an issue must show that: (1) the estopped party had knowledge of the facts at the time he or she took the original position; (2) the estopped party succeeded in maintaining the original position; (3) the position presently taken is inconsistent with the original position; and (4) the original position misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party. *George Trust,* ¶ 51 (citing *Fiedler*, 266 Mont. at 140, 879 P.2d at 679). We conclude that all four elements have been met and preclude Dr. Kauffman from asserting his equitable claims.

¶17 First, Dr. Kauffman was aware of the facts at the time the original position was taken. He knowingly transferred all of his assets to his wife and then testified that he owned no rights, title, or interest in and to any of the corporation's stock or assets during a debtor's examination hearing conducted after the judgment was entered against him in the medical malpractice action.

Second, he successfully maintained this position because no claim was made to pierce the corporate veil nor was an attempt made to levy a judgment against the corporation's assets. Third, Dr. Kauffman's current equitable claims of resulting and constructive trusts are inconsistent with his previous position that he did not have ownership or control of any

corporate assets. Since Dr. Kauffman claimed that he had no interest in the corporation or its assets during a previous legal action, he is now barred from claiming an interest in the corporation or its assets.

¶18 Finally, Dr. Kauffman's original position misled both the plaintiffs in the medical malpractice action and in the current action. Relying on Dr. Kauffman's testimony at the debtor's examination hearing, the plaintiffs in the medical malpractice action believed Dr. Kauffman had no assets in the corporation to execute on to satisfy the judgment. Similarly, evidence presented in this case shows that Elizabeth and Rebecca were misled by Dr. Kauffman's position in that they both believed that they were full shareholders in the corporation. Both Elizabeth and Rebecca testified that they had expended significant time and money as shareholders in the corporation. Clearly, the plaintiffs in both the medical malpractice case and the case at hand relied to their detriment on Dr. Kauffman's prior judicial declarations that he had no right to or control over the assets of the corporation. Accordingly, we conclude that Dr. Kauffman is barred by judicial estoppel from raising equitable claims that resulting or constructive trusts exist.

¶19 Elizabeth and Rebecca also claim that Dr. and Mrs. Kauffman are further barred from bringing their claims by the clean hands doctrine. The doctrine of clean hands provides that "[p]arties must not expect relief in equity, unless they come into court with clean hands." See *In re Marriage of Burner* (1991), 246 Mont. 394, 397, 803 P.2d 1099, 1100 (citations omitted). Thus, "[n]o one can take advantage of his own wrong." Section 1-3-208, MCA. Accordingly, this Court will not aid a party whose claim had its inception in the party's wrongdoing, whether the victim of the wrongdoing is the other party or a third party. *See Murphy v. Redland* (1978), 178 Mont. 296, 309, 583 P.2d 1049, 1056 (citation omitted).

¶20 Likewise, the Restatement (Second) of the Law of Trusts, § 422 (1957), states:

> Where the owner of property transfers it inter vivos upon an intended trust which fails for illegality, a resulting trust does not arise if the policy against permitting unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction.

¶21 Further, Comment a to the Restatement (Second) of the Law of Trusts, § 422 (1957), provides:

The rule stated in this Section is based upon the weighing of the interests of the parties and the public interest. As between the parties it is just that a resulting trust should be imposed in order to prevent the transferee from being unjustly enriched at the expense of the transferor. The interest of the public, however, may require that the transferee be permitted to enrich himself unjustly at the expense of the transferor. The result of the refusal of the court to enforce a resulting trust is not only to penalize the transferor but to enrich the transferee. . . . It is impossible to state a definite rule which will determine in all cases whether a resulting trust will be imposed or not, since the court will consider all the circumstances involved in the particular case.

¶22 Accordingly, a court of equity generally will not aid one who has caused title to his or her property to be transferred to another for the purpose of defrauding creditors. The evidence in this case reveals that Dr. and Mrs. Kauffman knowingly transferred assets to the family corporation, in part, to circumvent judgment creditors and in part, to avoid estate taxes. Here, the evidence also establishes that Dr. Kauffman failed to carry insurance on his medical practice and subsequently protected his corporate assets from judgment creditors by transferring his ownership interest in the corporation to his wife. Further, when Dr. Kauffman transferred his stock to Mrs. Kauffman, the stock certificates were backdated to appear that the stock transfer occurred significantly prior to the medical malpractice judgment to prevent his victims in that case from levying those assets. Subsequently, Dr. Kauffman specifically testified that he had no control or ownership over the assets of the corporation to prevent the judgment creditors from reaching those assets. Consequently, Dr. and Mrs. Kauffman's willful actions are sufficient to invoke the clean hands doctrine.

¶23 Moreover, Elizabeth and Rebecca will not be unjustly enriched by the utilization of the clean hands doctrine. Elizabeth and Rebecca were gifted stock in the corporation, accepted the stock ownership and have relied on their ownership over the past number of years. As shareholders, Elizabeth and Rebecca have expended substantial amounts of personal time and finances. Dr. and Mrs. Kauffman cannot now attempt to controvert their previous actions which disposed of their assets to defraud Dr. Kauffman's creditors and prevent execution on their property.

¶24 We thus conclude that Dr. and Mrs. Kauffman are barred from asserting their claims by the clean hands doctrine. To deny such relief would permit Elizabeth and Rebecca, as well as the other shareholders of the corporation, a gross wrong at the hands of Dr. and

Mrs. Kauffman who brought about this condition. *See* § 1-3-208, MCA.

¶25 Because Dr. and Mrs. Kauffman's claims are barred we need not address subsequent issues. We remand this case for a full trial on the remaining claims.

¶26 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER