JUSTICE RICE
concurring in part and dissenting in part.
¶28 I concur that the District Court erred in determining that Hando is distinguishable from Elizabeth’s case. However, for the reasons set *338 forth below, I dissent from the ultimate result reversing the District Court. I write separately on the former because Hando’s own analysis is confusing and misleading, and because this Court’s majority opinion, rather than clarifying Hando, serves forth the same confusion.
A. Tolling the Limiting Statute
¶29 This Court’s analysis in Hando is far from a model of clarity and, at best, is internally inconsistent. Although not argued precisely in this manner, the fulcrum of Hando’s argument for tolling the statute of limitations is that the facts surrounding the essential element of causation were, by their very nature, self-concealing. Of course, at the time Hando filed her complaint in 1985, Montana law did not provide that a limiting statute could be tolled if the facts constituting a claim were self-concealing. Bennett v. Dow Chemical Co. (1986), 220 Mont. 117, 120-21, 713 P.2d 992, 994. Rather, Montana law provided that the limiting statute could be tolled until a plaintiff discovers, or in the exercise of due diligence, should have discovered the injury if the injury is self-concealing. Johnson v. St. Patrick’s Hosp. (1966), 148 Mont. 125, 417 P.2d 469.
¶30 Although the Court in Hando cites to Johnson for its authoritative standard for tolling the limiting statute, it does not apply Johnson or any other stated standard. Indeed, the Court could not apply the standard set forth in Johnson and still salvage Hando’s claim. The standard in Johnson provides only that a limiting statute can be tolled if the plaintiff sustained a self-concealing injury. Hando clearly did not sustain a self-concealing injury, and the Court in Hando took pains to point this out. Although Montana law did not provide for it at the time Hando filed her complaint, the limiting statute was tolled because the facts constituting Hando’s claim were, themselves, self-concealing.
¶31 There is, of course, a difference between not knowing that one is injured (Johnson— surgical gauze left in hip not discovered for seven years), and knowing full well that one is seriously injured, but not knowing the cause of the injury {Hando-iaymy immediately obvious and medical attention sought repeatedly for a period of years).
¶32 The Legislature specifically recognized this dichotomy when it enacted Senate Bill 160, codified as § 27-2-102(3)(a), MCA (1987). The statute as enacted, and in its current form, provides:
The period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if the facts constituting the claim are by their nature concealed or *339 self-concealing. [Emphasis supplied.]
¶33 The original version of SB 160 reflected the law as provided in Johnson, stating that the period of limitation does not begin on any claim or cause of action for an injury to a person “until the injury has been discovered” providing that “the injury is by its nature concealed or self-concealing.” Reflecting concern that the statute in its proposed form, read in conjunction with current Montana case law, would preclude tolling a limiting statute if the injury were known, but the facts constituting the claim were not, the Senate Judiciary Committee amended SB 160 and the Legislature enacted the statute in its current form. The Committee twice replaced the word “injury” and in its stead placed the phrase “facts constituting the claim.”
¶34 With the Legislature’s enactment of the statute, not only can the statute of limitations be tolled if an injury is self-concealing {Johnson), but so also can the limiting statute be tolled if the facts constituting the claim are, by their very nature, self-concealing, as in Hando or as with Elizabeth’s situation (injury immediately obvious, but with an unknown cause, and medical attention sought repeatedly for a period of years).
¶35 Montana law, therefore, provides that the limiting statute can be tolled under two separate standards for two different factual situations. There is no reason to confuse the two, although this Court’s analysis in Hando and in the present opinion does precisely that. Hando clearly applies to the present situation because, factually, it is nearly identical, and the result, all other things being equal, should also be identical. But that does not mean that Hando’s faulty analysis-citing the incorrect standard for tolling the limiting statute and then applying an unstated standard-should be perpetuated in our case law.
¶36 The majority correctly cites to Gomez and to Kaeding, noting that current Montana law provides that the limiting statute can be tolled “until the injured party has discovered the facts constituting the claim, or with due diligence, should have discovered those facts,” if the “facts constituting a claim or cause of action for personal injury are, by their nature, concealed or self-concealing.” ¶ 14.
¶37 The majority notes that these principles were applied in Hando. This is true enough, as the standards and principles actually stated in Hando were inapplicable and not applied to that situation and are not applicable in the present situation. But the majority then continues in ¶¶ 17 and 18, repeating Hando’s erroneous standard as though that standard satisfactorily resolves the issue now before the Court for review:
*340 In recognizing that when an injury is self-concealing, the statute of limitations is tolled until a plaintiff discovers her injury, or until she should have discovered her injury with the use of due diligence, we found that although Hando was “very much aware” of her medical problems and that she “suspected that her ongoing ailments stemmed from her exposure” to paint, “she did not know the cause of those injuries until May of 1984,” when the “veracity of her belief’ was finally known.
... Both Hando and Elizabeth suspected the cause her [known] injuries and diligently sought medical treatment and diagnosis, but neither was certain of the causal relationships until later confirmed by a physician. [Emphasis supplied.]
¶38 This analysis parallels the analysis in Hando: Statement of self-concealing injury standard, acknowledgment that no self-concealing injury exists, and finally, tolling the limiting statute, not because of a self-concealing injury, but because the essential facts regarding causation are by their nature concealed or self-concealing.
¶39 Elizabeth and Hando sustained injuries that were obvious from their inception, even if the eventual extent of their injuries and the causal relationship to their particular exposure remained unknown. Clearly it is not necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations. “Few are the injuries that could not someday develop additional consequences.” E.W. v. D.C.H (1988), 231 Mont. 481, 487, 754 P.2d 817, 821.
¶40 Rather, both Hando and the instant case concern facts of a self-concealing nature relating to the essential element of causation-i/ie critical similarity between the two being continuing medical treatment over numerous years, revealing insufficient facts for treating physicians to diagnose a causal relationship. That their physicians, for numerous years, had been unable to confirm a causal connection between their respective exposure and their non-concealed injuries demonstrates the self-concealing nature of the facts regarding the essential element of causation, and consequently, demonstrates the self-concealing nature of the facts constituting their claims.
¶41 The correct standard to apply to the instant situation, therefore, is set forth in § 27-2-102(3)(a), MCA, as reflected in Gomez and Kaeding — and upon that standard alone should the limiting statute be tolled in the instant situation. Drawing parallels between Hando and Elizabeth’s situations is instructive; applying the standard stated in Hando to the present situation is both incorrect and confusing.
¶42 Therefore, while I agree with the majority that the District Court erred in distinguishing Elizabeth’s present factual situation from *341 Hando’s, I disagree with the majority’s analysis in reaching that conclusion.
B. Judicial Estoppel
¶43 I dissent from the Court’s reversal of the District Court. Based upon the following, I would affirm the decision of the District Court, although based upon different reasons than those utilized by the District Court.
¶44 As noted by the majority, Robert also argues on appeal that Elizabeth had knowledge of the causal connection between her exposure and her injury as early as May 9,1995, as evidenced by her motion for modification of the settlement agreement. As reflected in the above discussion, I completely agree with the majority that knowledge of the causal connection cannot be imputed to Elizabeth via her May 9, 1995, motion, as the facts constituting her claim were, by their nature, self-concealing. That conclusion, however, does not and should not end the discussion.
¶45 This Court has held that the doctrine of judicial estoppel binds a party to his or her judicial declarations, and precludes a party from taking a position inconsistent with them in subsequent actions or proceedings. In re Raymond W. George Trust, 1999 MT 223, ¶ 51, 296 Mont. 56, ¶ 51, 986 P.2d 427, ¶ 51; Fiedler v. Fiedler (1994), 266 Mont. 133, 139, 879 P.2d 675, 679. The doctrine, sometimes referred to as the doctrine of preclusion of inconsistent positions, “binds a party to his or her judicial declarations, and precludes a party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding.” Kauffman-Harmon v. Kauffman, 2001 MT 238, ¶15, 307 Mont. 45, ¶ 15, 36 P.3d 408, ¶ 15 (citation omitted). The doctrine not only prevents a party from changing its position within the same proceeding, but also precludes a litigant from asserting “the existence of one state of facts in one action and, being unsuccessful in such action, assert[ing] in a subsequent action a different state of facts wholly inconsistent with those asserted in the first action...” 31 C.J.S. Estoppel and Waiver § 141, p. 604 (1996); see also Davidson v. State of Texas (1987), 737 S.W.2d 942, 948 (“[judicial estoppel] effectively estops a party who has taken a position in an earlier proceeding from taking a contrary position at a later time” (citation omitted)).
¶46 Elizabeth acknowledges that she moved to modify the Separation Agreement because it did not contemplate her injuries sustained as a result of exposure to various chemicals while working on the ranch operation with Robert. While admitting that this was the basis for her motion, Elizabeth argues that the language of the motion itself did not unequivocally state that a causal connection had been made, but *342 rather, that the causal link was still speculative. While this argument is compelling in relation to Montana’s discovery doctrine, it is not compelling under the doctrine of judicial estoppel.
¶47 It is clear that Elizabeth’s motion relied upon the existence of such causal link for the relief sought in her dissolution proceeding:
The injuries suffered as the result of improper use of these chemicals ... constitute a life threatening and life long problem.... Therefore, counsel requests that the Court ... set aside the Property Settlement Agreement in light of this new evidence.
In requesting that the District Court refrain from entering any decree of dissolution and to set aside the Property Settlement Agreement in light of “new evidence’-consisting of Elizabeth’s doctors “now believing that her problem may very well stem from certain poisons used on the ranch,” and that the “injuries suffered as the result of the improper use of these chemicals constitute a life threatening and life long problem’-Elizabeth’s actions compel the application of the doctrine of judicial estoppel.
¶48 This Court has previously used a four-part test when applying judicial estoppel, requiring that: (1) The estopped party must have knowledge of the facts at the time the original position is taken; (2) the party must have succeeded in maintaining the original position; (3) the position presently taken must be actually inconsistent with the original position; and (4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party. See Fiedler v. Fiedler (1994), 266 Mont. 133, 879 P.2d 675 (concluding that the four elements were present where the appellant succeeded in asserting one factual position in the district court but adopted a contradictory factual position on appeal); also see Colwell v. Great Falls (1945), 117 Mont. 126, 139, 157 P.2d 1013, 1019 (overruled on other grounds).
¶49 Although the four-part test may be helpful, it is not necessarily appropriate in every circumstance where a party adopts inconsistent factual positions injudicial proceedings. In Rowland v. Klies (1986), 223 Mont. 360, 726 P.2d 310, this Court did not use the four-part test in preventing the appellant from asserting a contradictory factual position subsequent to an adverse ruling of the district court. In holding the appellant judicially estopped, we stated that “[t]he rule is well established that during the course of litigation a party is not permitted to assume or occupy inconsistent and contradictory positions, and while this rule is frequently referred to as ‘judicial estoppel,’ it more properly is a rule which estops a party to play fast- and-loose with the courts ...” Rowland, 224 Mont. at 367, 726 P.2d at *343 315 (citing 31 C.J.S. Estoppel § 117B, pgs. 623-627 (1964)). The doctrine is an equitable concept and “[tjhere is no pat formula for applying judicial estoppel, and a flexible standard for judicial estoppel permits consideration of all circumstances involved.” 31 C.J.S. Estoppel and Waiver § 139, p. 595 (1996); see also Czajkowski v. Chicago (1993), 810 F.Supp. 1428, 1445 (“[¡judicial estoppel is a flexible standard not reducible to a pat formula”).
¶50 Notwithstanding the qualifying language in Elizabeth’s May 9, 1995, motion, Elizabeth clearly relied upon the existence of a sufficient causal link within that motion, filed within a previous judicial proceeding, in an attempt to obtain relief. Elizabeth should not now be allowed to adopt an inconsistent position in an attempt to secure a favorable ruling with regard to the statute of limitations. To do so constitutes an improper use of the judicial process.
¶51 The purpose of judicial estoppel is to prevent the use of such inconsistent assertions, thereby preventing the improper use of judicial machinery and protecting the integrity of the judicial process. See Jackson v. County of Los Angeles (1997), 60 Cal.App.4th 171, 181 (citing Russell v. Rolfs (9th Cir. 1990), 893 F.2d 1033, 1037). Imposition of the doctrine does not impute truth to a party’s original declaration, but merely prevents the adoption of inconsistent positions where such an adoption would be an affront to judicial dignity. Jackson, 60 Cal.App.4th at 181. Also see 31 C.J.S. Estoppel and Waiver § 2, p. 345 (1996).
¶52 Likewise, imposition of the doctrine here would not impute truth to Elizabeth’s stance in her May 1995 motion. In fact, the totality of the evidence prior to the 1996 diagnosis is not conclusive of a causal connection between her exposure and her injury. But the discovery doctrine is not at issue here. Rather, it is Elizabeth’s improper use of judicial machinery. Aside from the fact that her May 1995 motion contained qualifying language, Elizabeth attempted to receive a judicially obtained benefit by relying on the causal connection between her injury and her exposure to the chemicals. Elizabeth’s later reliance on the lack of a causal connection for the purpose of avoiding an adverse judicial ruling is a misuse of the judicial process.
¶53 I would, therefore, hold that Elizabeth is judicially estopped from maintaining a position inconsistent with that taken in her May 9, 1995, motion, and affirm the decision of the District Court.
JUSTICE LEAPHART joins in the foregoing concurring and dissenting opinion of JUSTICE RICE.