No. 01-109

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 151

M. ELIZABETH NELSON,

        Plaintiff/Appellant,

  v.

ROBERT Y. NELSON,

        Defendant/Respondent.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                     In and for the County of Custer,
                     The Honorable Gary L. Day, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Robert E. LaFountain, Billings, Montana

        For Respondent:

                J. Dennis Corbin, Miles City, Montana; Brent R. Cromley, Billings,
Montana

Submitted on Briefs:  July 12, 2001

Decided:  July 2, 2002

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    M. Elizabeth Nelson (Elizabeth), appeals from the order of the Sixteenth Judicial District Court, Custer County, granting summary judgment in favor of Robert Y. Nelson (Robert), on the grounds that Elizabeth's cause of action was barred by the three-year statute of limitations.

¶2    The sole issue is whether the District Court erred in granting summary judgment to Robert.  We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On May 14, 1998, Elizabeth filed a complaint, alleging she suffered injuries while working on a ranch operated by Robert.  At the time of her injuries, Elizabeth and Robert were married, but the couple later divorced.  As part of the ranch operation, Robert applied pesticides and insecticides and also inoculated sheep against sore mouth disease.  Elizabeth assisted Robert with ranching activities on a regular basis from 1989 until their divorce proceedings began in 1994.  Elizabeth claimed that on several occasions from 1989 to 1994, she was exposed to pesticides and insecticides (chemicals) as a result of Robert's improper methods of application.  Additionally, in July, 1989, while Elizabeth was holding a sheep in preparation for inoculation, Robert's assistant, Merle Nelson, accidentally injected Elizabeth's hand with bovine ecthyma vaccine, a vaccine containing the live virus for sore mouth disease.  Elizabeth became dizzy immediately after the injection and lapsed into

2

unconsciousness. After regaining consciousness, Elizabeth continued assisting with inoculating sheep throughout the rest of the day.

¶4 From 1989 through 1998, when Elizabeth filed the complaint in this matter, Elizabeth received extensive medical evaluations and treatments for numerous physical ailments which either surfaced or worsened subsequent to her exposure to the chemicals and the vaccine. Elizabeth suffered from many medical problems including rheumatoid arthritis, sleep apnea, Pickwithian syndrome, recurrent blistering on her feet and in her mouth, diabetes, hypothyroidism, headaches, and severe upper respiratory problems.

¶5 Elizabeth's physicians were uncertain of the possible cause and effect relationship between her numerous physical ailments and her exposure to chemicals and the vaccine. One of her physicians, L. Keith Scott, M.D. (Dr. Scott), noted in an August 11, 1995 letter that:

> The cause of much of her problem is still in question. She was exposed to multiple chemicals and has been seen by the toxicology unit at the University of Colorado. They did find that she did have some over exposure to certain chemicals but still have not addressed cause and effect relation.

¶6 Elizabeth sought medical treatment from Richard A. Nelson, M.D. (Dr. Nelson) on March 6, 1996. Dr. Nelson contacted the Centers for Disease Control in order to obtain information on human reactions to injection with bovine ecthyma vaccine, but no information was available, as Elizabeth was the only known person to have ever been injected with the vaccine. Regarding his belief as to a possible causal connection, Dr. Nelson stated in a letter dated May 20, 1996, that:

> [Elizabeth] has a significant list of physical disorders, not the least of which are asthma, reactive airway disease, rheumatoid arthritis, toxic exposure to

3

nervous system associated with agricultural chemicals including herbicides, pesticides, and being directly injected with the vaccine for sore mouth disease . . . . This resulted in a systemic autoimmune reactivity associated with skin and mucus membrane disorders.

¶7 Elizabeth filed her complaint against Robert on May 14, 1998, for damages incurred as a result of her exposure to the pesticides and insecticides and the injection of the bovine ecthyma vaccine. Robert moved for summary judgment, arguing that Elizabeth's cause of action was barred by the three-year statute of limitations for negligence. Robert argued that Elizabeth knew of her injuries more than three years before this action was filed, as evidenced by a Motion for Modification of Separation Agreement she filed in the parties' marital action on May 10, 1995. In the motion, Elizabeth's attorney represented that "[a]t the time and entry of the decree, [Elizabeth] suffered from certain damages which were undisclosed or unknown to her or to her physicians. She had undergone an extensive amount of testing, evaluation and examination, but no determination of the cause of her problems existed." The motion also stated:

After entering into the Separation Agreement, the doctors now believe that the cause of her problem may very well stem from certain poisons used on the ranch . . . .

The injuries suffered as a result of improper use of these chemicals . . .

constitute a life threatening and life long problem . . . .

¶8 Following a hearing on October 25, 2000, the District Court entered an order and memorandum granting Robert's summary judgment motion. The court concluded that Elizabeth's claim accrued when she was accidentally injected with the bovine vaccine in July

4

of 1989, and that her complaint was therefore barred by the three-year statute of limitations. Elizabeth appeals the District Court's grant of summary judgment.

## STANDARD OF REVIEW

¶9 We review appeals from summary judgment rulings *de novo*. *Sleath v. West Mont Home Health Services*, 2000 MT 381, ¶ 19, 304 Mont. 1, ¶ 19, 16 P.3d 1042, ¶ 19 (citation omitted). When we review a district court's grant of summary judgment, we apply the same evaluation that the district court uses, based on Rule 56, M.R.Civ.P. *Sleath*, ¶ 19 (citation omitted). We set forth our inquiry as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Sleath*, ¶ 19 (citing *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21). We review a district court's interpretation of law to determine if it is correct. *Steinback v. Bankers Life and Cas. Co.*, 2000 MT 316, ¶ 11, 302 Mont. 483, ¶ 11, 15 P.3d 872, ¶ 11 (citation omitted).

## DISCUSSION

¶10 Did the District Court err when it granted summary judgment to Robert?

¶11 In its memorandum and order granting summary judgment, the District Court concluded Elizabeth was barred by the three-year statute of limitations under § 27-2-204(1), MCA, because Elizabeth immediately suffered injuries following the injection, and thus

5

"sustained obviously tortious injuries in July, 1989." The court distinguished Elizabeth's claim from *Hando v. PPG Industries, Inc.* (1989), 236 Mont. 493, 771 P.2d 956, wherein we held that the onset of the statute of limitations is determined by applying the discovery rule and establishing when the injured person knew, or in the exercise of due diligence, should have known of the facts constituting the cause of action. The District Court reasoned that Elizabeth's injuries following the injection, unlike Hando's latent injuries which developed over time, were "obvious" and "immediate," noting Elizabeth instantly suffered unconsciousness after being injected with the vaccine. Accordingly, the court did not consider the averments in Elizabeth's motion to modify the separation agreement.

¶12  Elizabeth argues the statute of limitations was tolled until the date her physical ailments were causally connected to the chemicals and the vaccine injection; thus her claim (filed in May, 1998) was filed within three years from the date Dr. Nelson first established the causal connection (May, 1996). Elizabeth contends that although she lost consciousness after the injection, the vaccine did not leave immediately noticeable effects, and that her subsequent physical problems surfaced over the course of time, and were not causally linked to the injection until 1996. Elizabeth contends the District Court erred in its interpretation of *Hando*, arguing *Hando* is not distinguishable from her situation.

¶13  Robert agrees with the District Court and asserts that this case is not controlled by *Hando*, arguing that Elizabeth's injury was obviously tortious, unlike Hando's latent disease or injury. Robert also alleges Elizabeth knew of the causal connection between the injection

6

and her physical ailments as early as May 10, 1995, as evidenced by her motion for modification of the settlement agreement.

¶14 The statute of limitations in Montana in an action for negligence is three years. Section 27-2-204(1), MCA. The period of limitation begins when the claim or cause of action accrues and is not postponed because of lack of knowledge of the claim or cause of action by the party to whom it has accrued. Section 27-2-102(2), MCA. However:

> [t]he period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:
>
> (a) the facts constituting the claim are by their nature concealed or self-concealing.
> . . . .

Section 27-2-102(3), MCA. Addressing this so-called "discovery rule," we have held that "when the facts constituting a claim or cause of action for personal injury are, by their nature, concealed or self-concealing," the period of limitations does not begin to run "until the injured party has discovered the facts constituting the claim or, with due diligence, should have discovered those facts." *Gomez v. State*, 1999 MT 67, ¶ 10, 293 Mont. 531, ¶ 10, 975 P.2d 1258, ¶ 10 (citing § 27-2-102(3)(a), MCA; and *Kaeding v. W.R. Grace & Co.*, 1998 MT 160, ¶ 17, 289 Mont. 343, ¶ 17, 961 P.2d 1256, ¶ 17).

¶15 We applied these principles in *Hando*, where the plaintiff was exposed to paint fumes while working at a coal processing plant in 1981 and 1982, and in the years following her exposure, suffered from many physical, mental, and emotional reactions. *Hando*, 236 Mont. at 495-96, 771 P.2d at 958. When Hando was exposed to the paint in 1982, she briefly lost

7

consciousness, and her supervisor contacted the poison control center and arranged for her to be examined. *Hando*, 236 Mont. at 495, 771 P.2d at 958. Between 1982 and 1984, none of the numerous physicians who examined Hando would attribute her continuing ailments to her exposure to the paint. *Hando*, 236 Mont. at 502, 771 P.2d at 962.

¶16    Hando began receiving worker's compensation benefits for her ailments in May of 1982. However, she did not commence a tort action until October, 1985, following her receipt of a medical opinion in early 1984 that her problems were caused by her toxic exposure to paint. *Hando*, 236 Mont. at 496, 771 P.2d at 958.

¶17    In recognizing that when an injury is self-concealing, the statute of limitations is tolled until a plaintiff discovers her injury, or until she should have discovered her injury with the use of due diligence, we found that although Hando was "very much aware" of her medical problems and that she "suspected that her ongoing ailments stemmed from her exposure" to paint, she did not know the cause of those injuries until May of 1984, when "the veracity of her belief" was finally known. *Hando*, 236 Mont. at 501, 771 P.2d at 962. We noted that although Hando diligently sought to establish the cause of her ailments, none of the physicians who examined her prior to 1984 attributed her problems to her exposure to paint, and thus held the statute of limitations on Hando's claim was tolled until a medical opinion confirmed the causal connection between her symptoms and her injury ("three-year statute of limitations did not begin to run until a medical opinion was rendered in April-May of 1984 linking her injuries to her exposure to the PPG paint") *Hando*, 236 Mont. at 502, 771 P.2d at 962.

8

¶18    We conclude the District Court erred in distinguishing Elizabeth's situation from our holding in *Hando*. In both *Hando* and here, the plaintiff lacked knowledge concerning the ultimate causal link between the ailments suffered by her and the exposures each had experienced (i.e., paint or chemicals and the vaccine). Both Hando and Elizabeth suspected the cause of her injuries and diligently sought medical treatment and diagnosis, but neither was certain of the causal relationships until later confirmed by a physician. Notably, both plaintiffs suffered immediate effects from the exposure as evidenced by loss of consciousness, but both plaintiffs also suffered other continuing effects that neither could have predicted at the time of the exposure. Moreover, both plaintiffs asserted beliefs or suspicions that her medical problems stemmed from exposure to paint/chemicals prior to filing her respective cause of action: Hando signed a workers' compensation claim in May of 1982, stating her belief that her problems stemmed from exposure to paint; and Elizabeth filed a motion to modify a marital settlement wherein she recited suspicions concerning problems possibly caused by her exposure to pesticides. Therefore, we conclude this case is on all fours with *Hando*, and disagree with the District Court's conclusions to the contrary.

¶19    Although in his dissent, Justice Rice agrees *Hando* applies to Elizabeth's factual situation--albeit by a slightly different analysis--he goes on to argue Elizabeth's claim should be dismissed under the doctrine of judicial estoppel. First, we note that Robert did not assert the doctrine of judicial estoppel in either his Motion for Summary Judgment, or on appeal. Recently, "we decline[d] to consider arguments based on the doctrine of judicial estoppel that

9

are raised for the first time on appeal." *Wheelsmith Fabrication v. Dept. of Labor*, 2000 MT 27, ¶ 15, 298 Mont. 187, ¶ 15, 993 P.2d 713, ¶ 15 (citation omitted).

¶20    Turning to the merits of Justice Rice's dissent, although it correctly notes the purpose of judicial estoppel is to prevent the use of inconsistent assertions and to prevent parties from playing fast and loose with the courts, it fails to apply the rationale underlying the doctrine to the facts presented here.  Judicial estoppel is a doctrine created by judges that:

> seeks to prevent a litigant from asserting a position [that is] inconsistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding; it is designed to prevent litigants and their counsel from playing fast and loose with the courts and to protect the integrity of the judicial process.  Judicial estoppel doctrine is equitable and is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.  The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeating litigant.

28 Am. Jur. 2d Estoppel and Waiver § 74 (2000).

¶21    Contrary to assertions made by Justice Rice in his dissent, there are no such "chameleonic" machinations here.  Throughout her illnesses, Elizabeth diligently sought to establish the link between her injection and exposures and her illness.  She is not now changing her theory of liability, nor is she trying to prevail on opposite theories.  Rather, she waited to bring her claim until she could prove the necessary nexus between the suspected cause of her ailments and her ongoing medical conditions.  There is simply no evidence that Elizabeth is seeking to play fast and loose with the courts or trying to take advantage of earlier proceedings.

10

¶22 Finally, contrary to the argument in both dissents, judicial estoppel does not apply here because Elizabeth's current position is not inconsistent with what she averred in May of 1995. The doctrine of judicial estoppel binds a party to her judicial declarations, and precludes her from taking a position inconsistent with them in a subsequent action or proceeding. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 15, 307 Mont. 45, ¶ 15, 36 P.3d 408, ¶ 15. There is simply no actual inconsistency between Elizabeth's speculation on the possible causes of her medical condition when seeking modification of her marital settlement, and her current assertion, following Dr. Nelson's diagnosis of May 20, 1996, that there is a medically established causal relationship between the combination of the injection with her exposure to chemicals, and her medical condition.

¶23 Moreover, we do not agree that Elizabeth's motion to modify the settlement agreement definitively established her knowledge of the causal connection between her injuries and the chemicals and injection. On August 11, 1995, nearly three months after the motion was filed, there was still uncertainty as to the causal connections as evidenced by Dr. Scott's letter which stated: "[The toxicology unit] did find that [Elizabeth] did have some over exposure to certain chemicals but [they] still have not addressed cause and effect relation. We are looking into these cause and effect relationships and more information should be forthcoming." Moreover, the statements in Elizabeth's motion are speculative as to the cause of her injuries: "doctors now <u>believe</u> that the cause of her problem <u>may</u> very well stem from certain poisons used on the ranch . . ." (emphasis added).

11

¶24     If the state of Elizabeth's knowledge, or her diligence in discovering the causal link between the injection and chemicals and her ailments was disputed, this issue could not be resolved on summary judgment.  The rule in Montana, and in the majority of jurisdictions, is that when there is conflicting evidence as to when a cause of action accrued, the question of whether an action is barred by the statute of limitations is for the jury to decide.  *Hill v. Squibb & Sons, E.R.* (1979), 181 Mont. 199, 212, 592 P.2d 1383, 1390-91 (citation omitted).  *See also*, *McCormick v. Brevig*, 1999 MT 86, ¶¶ 102-103, 294 Mont. 144, ¶¶ 102-103, 980 P.2d 603, ¶¶ 102-103 (it is for the trier of fact to determine at what point plaintiff discovered or should have discovered through due diligence any negligence by the accountant when the existence of a trust was self-concealing); and *Werre v. David* (1996), 275 Mont. 376, 384, 913 P.2d 625, 630 (the point at which plaintiff discovered a connection between the sexual abuse she experienced as a child and her mental disorders as an adult was a question of fact for the jury; thus, denial of defendant's motion for a directed verdict was correct).

¶25     However, Robert did not challenge Elizabeth's diligence in discovering the causal connection, nor did he dispute the date of Dr. Nelson's conclusions concerning causation.  Instead, Robert asserted Elizabeth's injuries were distinguishable from those in *Hando* because they were immediate and obviously tortious, and that Elizabeth's averments in her motion indicated an earlier knowledge of the causal link than that established by Dr. Nelson in May of 1996.  Other than his interpretation of Elizabeth's motion, Robert asserted no independent facts, such as physicians' opinions or medical evaluations, that imputed knowledge of the causal link to Elizabeth prior to May of 1996.  We have concluded that

12

Elizabeth's averments in her motion to modify did not establish she knew of a causal connection between her injuries and the chemicals and injection at that time. Thus, there appears to be no factual dispute as to the timing of Elizabeth's knowledge of the causal connections, such as would require remand for further factual determination.

¶26    Therefore, it appears there is no genuine issue of material fact as to whether Elizabeth discovered, or in the exercise of due diligence should have discovered, the causal relationship between her ailments and the combination of the chemicals and the vaccine, more than three years before she filed suit. Therefore we conclude as a matter of law that Elizabeth's complaint was timely filed.

¶27    Accordingly, the District Court's order granting summary judgment is reversed and this case is remanded for trial on the merits.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER

13

Justice Jim Rice concurring in part and dissenting in part.

¶28    I concur that the District Court erred in determining that *Hando* is distinguishable from Elizabeth's case. However, for the reasons set forth below, I dissent from the ultimate result reversing the District Court. I write separately on the former because *Hando's* own analysis is confusing and misleading, and because this Court's majority opinion, rather than clarifying *Hando*, serves forth the same confusion.

### A.  Tolling the Limiting Statute

¶29    This Court's analysis in *Hando* is far from a model of clarity and, at best, is internally inconsistent. Although not argued precisely in this manner, the fulcrum of Hando's argument for tolling the statute of limitations is that the facts surrounding the essential element of causation were, by their very nature, self-concealing. Of course, at the time Hando filed her complaint in 1985, Montana law did not provide that a limiting statute could be tolled if the facts constituting a claim were self-concealing. *Bennett v. Dow Chemical Co.* (1986), 220 Mont. 117, 120-21, 713 P.2d 992, 994. Rather, Montana law provided that the limiting statute could be tolled until a plaintiff discovers, or in the exercise of due diligence, should have discovered the *injury* if the injury is self-concealing. *Johnson v. St. Patrick's Hosp.* (1966), 148 Mont. 125, 417 P.2d 469.

¶30    Although the Court in *Hando* cites to *Johnson* for its authoritative standard for tolling the limiting statute, it does not apply *Johnson* or any other stated standard. Indeed, the Court could not apply the standard set forth in *Johnson* and still salvage Hando's claim. The standard in *Johnson* provides only that a limiting statute can be tolled if the plaintiff

14

sustained a self-concealing injury. Hando clearly did not sustain a self-concealing injury, and the Court in *Hando* took pains to point this out. Although Montana law did not provide for it at the time Hando filed her complaint, the limiting statute was tolled because the facts constituting Hando's claim were, themselves, self-concealing.

¶31 There is, of course, a difference between not knowing that one is injured (*Johnson*–surgical gauze left in hip not discovered for seven years), and knowing full well that one is seriously injured, but not knowing the cause of the injury (*Hando*–injury immediately obvious and medical attention sought repeatedly for a period of years).

¶32 The Legislature specifically recognized this dichotomy when it enacted Senate Bill 160, codified as § 27-2-102(3)(a), MCA (1987). The statute as enacted, and in its current form, provides:

> The period of limitation does not begin on any claim or cause of action for an injury to person or property until the *facts constituting the claim* have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if the *facts constituting the claim are by their nature concealed or self-concealing*. [Emphasis supplied.]

¶33 The original version of SB 160 reflected the law as provided in *Johnson*, stating that the period of limitation does not begin on any claim or cause of action for an injury to a person "until the *injury* has been discovered" providing that "the *injury* is by its nature concealed or self-concealing." Reflecting concern that the statute in its proposed form, read in conjunction with current Montana case law, would preclude tolling a limiting statute if the injury were known, but the facts constituting the claim were not, the Senate Judiciary Committee amended SB 160 and the Legislature enacted the statute in its current form. The

15

Committee twice replaced the word "injury" and in its stead placed the phrase "facts constituting the claim."

¶34    With the Legislature's enactment of the statute, not only can the statute of limitations be tolled if an *injury* is self-concealing (*Johnson*), but so also can the limiting statute be tolled if the *facts constituting the claim* are, by their very nature, self-concealing, as in *Hando* or as with Elizabeth's situation (injury immediately obvious, but with an unknown cause, and medical attention sought repeatedly for a period of years).

¶35    Montana law, therefore, provides that the limiting statute can be tolled under two separate standards for two different factual situations.  There is no reason to confuse the two, although this Court's analysis in *Hando* and in the present opinion does precisely that. *Hando* clearly applies to the present situation because, factually, it is nearly identical, and the result, all other things being equal, should also be identical.  But that does not mean that *Hando's* faulty analysis–citing the incorrect standard for tolling the limiting statute and then applying an unstated standard–should be perpetuated in our case law.

¶36    The majority correctly cites to *Gomez* and to *Kaeding*, noting that current Montana law provides that the limiting statute can be tolled "until the injured party has discovered the facts constituting the claim, or with due diligence, should have discovered those facts," if the "facts constituting a claim or cause of action for personal injury are, by their nature, concealed or self-concealing." ¶ 14.

¶37    The majority notes that these principles were applied in *Hando*.  This is true enough, as the standards and principles actually stated in *Hando* were inapplicable and not applied to

16

that situation and are not applicable in the present situation. But the majority then continues in ¶¶ 17 and 18, repeating *Hando's* erroneous standard as though that standard satisfactorily resolves the issue now before the Court for review:

> In recognizing that when an *injury* is self-concealing, the statute of limitations is tolled until a plaintiff discovers her injury, or until she should have discovered her injury with the use of due diligence, we found that although Hando was "very much aware" of her medical problems and that she "suspected that her ongoing ailments stemmed from her exposure" to paint, "*she did not know the cause* of those injuries until May of 1984," when the "veracity of her belief" was finally known.
>
> . . . Both Hando and Elizabeth suspected the cause her [known] injuries and diligently sought medical treatment and diagnosis, but neither was certain of the causal relationships until later confirmed by a physician. [Emphasis supplied.]

¶38 This analysis parallels the analysis in *Hando*: Statement of self-concealing injury standard, acknowledgment that no self-concealing injury exists, and finally, tolling the limiting statute, not because of a self-concealing injury, but because the essential facts regarding causation are by their nature concealed or self-concealing.

¶39 Elizabeth and Hando sustained injuries that were obvious from their inception, even if the eventual extent of their injuries and the causal relationship to their particular exposure remained unknown. Clearly it is not necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations. "Few are the injuries that could not someday develop additional consequences." *E.W. v. D.C.H* (1988), 231 Mont. 481, 487, 754 P.2d 817, 821.

17

¶40    Rather, both *Hando* and the instant case concern facts of a self-concealing nature relating to the essential element of causation–*the critical similarity between the two being continuing medical treatment over numerous years, revealing insufficient facts for treating physicians to diagnose a causal relationship*. That their physicians, for numerous years, had been unable to confirm a causal connection between their respective exposure and their non-concealed injuries demonstrates the self-concealing nature of the facts regarding the essential element of causation, and consequently, demonstrates the self-concealing nature of the facts constituting their claims.

¶41    The correct standard to apply to the instant situation, therefore, is set forth in § 27-2-102(3)(a), MCA, as reflected in *Gomez* and *Kaeding*–and upon that standard alone should the limiting statute be tolled in the instant situation. Drawing parallels between Hando and Elizabeth's situations is instructive; applying the standard stated in *Hando* to the present situation is both incorrect and confusing.

¶42    Therefore, while I agree with the majority that the District Court erred in distinguishing Elizabeth's present factual situation from Hando's, I disagree with the majority's analysis in reaching that conclusion.

## B. Judicial Estoppel

¶43 I dissent from the Court's reversal of the District Court. Based upon the following, I would affirm the decision of the District Court, although based upon different reasons than those utilized by the District Court.

¶44 As noted by the majority, Robert also argues on appeal that Elizabeth had knowledge of the causal connection between her exposure and her injury as early as May 9, 1995, as evidenced by her motion for modification of the settlement agreement. As reflected in the above discussion, I completely agree with the majority that knowledge of the causal connection cannot be imputed to Elizabeth via her May 9, 1995, motion, as the facts constituting her claim were, by their nature, self-concealing. That conclusion, however, does not and should not end the discussion.

¶45 This Court has held that the doctrine of judicial estoppel binds a party to his or her judicial declarations, and precludes a party from taking a position inconsistent with them in subsequent actions or proceedings. *In re Raymond W. George Trust,* 1999 MT 223, ¶ 51, 296 Mont. 56, ¶ 51, 986 P.2d 427, ¶ 51; *Fiedler v. Fiedler* (1994), 266 Mont. 133, 139, 879 P.2d 675, 679. The doctrine, sometimes referred to as the doctrine of preclusion of inconsistent positions, "binds a party to his or her judicial declarations, and precludes a party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding." *Kauffman-Harmon v. Kauffman,* 2001 MT 238, ¶ 15, 307 Mont. 45, ¶ 15, 36 P.3d 408, ¶ 15 (citation omitted). The doctrine not only prevents a party from changing its position within the same proceeding, but also precludes a litigant from asserting "the

19

**Comment [COMMENT1]:** Alternative sentence:

Robert argues that the evidence otherwise in the record demonstrates that Elizabeth, her attorney and her doctors were aware of the causal connection between Elizabeth's exposure and her injury more than three years prior to the date Elizabeth filed a complaint. He contends that Elizabeth's cause of action accrued, at the latest, on May 9, 1995, thereby causing the statute of limitations on Elizabeth's claim to run by May 9, 1998, five days prior to Elizabeth filing her complaint. Robert bases his argument upon the language in the Motion for Modification of Separation Agreement, filed by Elizabeth's attorney on May 9, 1995. Robert argues that the language in this motion demonstrates that Elizabeth and her attorney, as well as her doctors, knew that exposure to the chemicals and vaccine were the cause of her physical ailments, and therefore, pursuant to § 27-2-102(2), MCA, Elizabeth's cause of action accrued no later than the date of the motion.

existence of one state of facts in one action and, being unsuccessful in such action, assert[ing] in a subsequent action a different state of facts wholly inconsistent with those asserted in the first action . . . ." *31 C.J.S. Estoppel and Waiver* § 141, p. 604 (1996); see also *Davidson v. State of Texas* **(1987), 737 S.W.2d 942, 948 ("[judicial estoppel] effectively estops a party who has taken a position in an earlier proceeding from taking a contrary position at a later time" (citation omitted)).**

¶46     Elizabeth acknowledges that she moved to modify the Separation Agreement because it did not contemplate her injuries sustained as a result of exposure to various chemicals while working on the ranch operation with Robert. While admitting that this was the basis for her motion, Elizabeth argues that the language of the motion itself did not unequivocally state that a causal connection had been made, but rather, that the causal link was still speculative. While this argument is compelling in relation to Montana's discovery doctrine, it is not compelling under the doctrine of judicial estoppel.

¶47     It is clear that Elizabeth's motion relied upon the existence of such causal link for the relief sought in her dissolution proceeding:

> The injuries suffered as the result of improper use of these chemicals . . . constitute a life threatening and life long problem. . . . Therefore, counsel requests that the Court . . . set aside the Property Settlement Agreement in light of this new evidence.

**In requesting that the District Court refrain from entering any decree of dissolution and to set aside the Property Settlement Agreement in light of "new evidence"– consisting of Elizabeth's doctors "now believing that her problem may very well stem**

20

**from certain poisons used on the ranch," and that** the "injuries suffered as the result of the improper use of these chemicals constitute a life threatening and life long problem"– Elizabeth's actions compel the application of the doctrine of judicial estoppel.

¶48    This Court has previously used a four-part test when applying judicial estoppel, requiring that: (1) The estopped party must have knowledge of the facts at the time the original position is taken; (2) the party must have succeeded in maintaining the original position; (3) the position presently taken must be actually inconsistent with the original position; and (4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party. See *Fiedler v. Fiedler* (1994), 266 Mont. 133, 879 P.2d 675 (concluding that the four elements were present where the appellant succeeded in asserting one factual position in the district court but adopted a contradictory factual position on appeal); also see *Colwell v. Great Falls* (1945), 117 Mont. 126, 139, 157 P.2d 1013, 1019 (overruled on other grounds).

¶49    Although the four-part test may be helpful, it is not necessarily appropriate in every circumstance where a party adopts inconsistent factual positions in judicial proceedings. In *Rowland v. Klies* (1986), 223 Mont. 360, 726 P.2d 310, this Court did not use the four-part test in preventing the appellant from asserting a contradictory factual position subsequent to an adverse ruling of the district court. In holding the appellant judicially estopped, we stated that "[t]he rule is well established that during the course of litigation a party is not permitted to assume or occupy inconsistent and contradictory positions, and while this rule is frequently referred to as 'judicial estoppel,' it more properly is a rule which estops a party to

21

play fast-and-loose with the courts . . ." *Rowland*, 224 Mont. at 367, 726 P.2d at 315 (citing *31 C.J.S. Estoppel* § 117B, pgs. 623-627 (1964)). The doctrine is an equitable concept and "[t]here is no pat formula for applying judicial estoppel, and a flexible standard for judicial estoppel permits consideration of all circumstances involved." *31 C.J.S. Estoppel and Waiver* § 139, p. 595 (1996); see also *Czajkowski v. Chicago* (1993), 810 F.Supp. 1428, 1445 ("[j]udicial estoppel is a flexible standard not reducible to a pat formula").

¶50     Notwithstanding the qualifying language in Elizabeth's May 9, 1995, motion, Elizabeth clearly relied upon the existence of a sufficient causal link within that motion, filed within a previous judicial proceeding, in an attempt to obtain relief. Elizabeth should not now be allowed to adopt an inconsistent position in an attempt to secure a favorable ruling with regard to the statute of limitations. To do so constitutes an improper use of the judicial process.

**¶51**     The purpose of judicial estoppel is to prevent the use of such inconsistent assertions, thereby preventing the improper use of judicial machinery and protecting the integrity of the judicial process. See *Jackson v. County of Los Angeles* (1997), 60 Cal.App.4th 171, 181 (citing *Russell v. Rolfs* (9th Cir. 1990), 893 F.2d 1033, 1037). **Imposition of the doctrine does not impute truth to a party's original declaration, but merely prevents the adoption of inconsistent positions where such an adoption would be an affront to judicial dignity. *Jackson,* 60 Cal.App.4th at 181. Also see *31 C.J.S. Estoppel and Waiver* § 2, p. 345 (1996).**

22

¶52 Likewise, imposition of the doctrine here would not impute truth to Elizabeth's stance in her May 1995 motion. In fact, the totality of the evidence prior to the 1996 diagnosis is not conclusive of a causal connection between her exposure and her injury. But the discovery doctrine is not at issue here. Rather, it is Elizabeth's improper use of judicial machinery. Aside from the fact that her May 1995 motion contained qualifying language, Elizabeth attempted to receive a judicially obtained benefit by relying on the causal connection between her injury and her exposure to the chemicals. Elizabeth's later reliance on the lack of a causal connection for the purpose of avoiding an adverse judicial ruling is a misuse of the judicial process.

¶53 I would, therefore, hold that Elizabeth is judicially estopped from maintaining a position inconsistent with that taken in her May 9, 1995, motion, and affirm the decision of the District Court.


/S/ JIM RICE


Justice W. William Leaphart joins in the foregoing concurring and dissenting opinion of Justice Rice.

/S/ W. WILLIAM LEAPHART

23

Justice Terry N. Trieweiler dissenting.

¶54    I dissent from the majority Opinion.

¶55    I conclude, based on the undisputed facts, that Elizabeth had knowledge of the causal

connection between chemical and vaccine exposure and her injuries and illness more than

three years prior to the date on which her complaint was filed and that her complaint was,

therefore, barred by the applicable three year statute of limitation found at § 27-2-204(1),

MCA.

¶56    On May 9, 1995, in a document filed on Elizabeth's behalf in the District Court for the

Sixteenth Judicial District in Custer County, her attorney represented as follows:

> 1.  At the time and entry of the decree, the Respondent suffered from certain damages which were undisclosed or unknown to her or to her physicians.  She had undergone an extensive amount of testing, evaluation and examination, but no determination of the cause of her problems existed.

> 2.  After entering into the Separation Agreement, the doctors now believe that the cause of her problem may very well stem from certain poisons used on the ranch, which were used under the direction and supervision of her husband, Robert Nelson.

> 3.  *The injuries suffered as a result of improper use of these chemicals as directed by Robert Nelson, constitute a life threatening and life long problem.*  That the terms of the Property Settlement Agreement did not take into consideration this life long threatening medical problem suffered by the Respondent which makes her unable to work.  [Emphasis added.]

> 4.  . . . Therefore, counsel requests that the Court not enter any decrees of dissolution and set aside the Property Settlement Agreement in light of this new evidence.

¶57    In *Kaeding v. W. R. Grace & Co.–Conn.,* 1998 MT 160, ¶ 26, 289 Mont. 343, ¶ 26,

961 P.2d 1256, ¶ 26, we held that "knowledge of facts by an attorney is knowledge by the

24

client, regardless of whether the attorney actually communicated the information to the client."

¶58 If Elizabeth's attorney had sufficient knowledge on May 9, 1995, to allege in documents filed with a District Court that Elizabeth suffered injuries as a result of improper use of chemicals by Robert and that her injuries were life threatening and life long, he had enough information to file a complaint in District Court making the same allegation. That degree of knowledge is all that was necessary in order for the statute of limitation to begin running. Absolute certainty is not required. Absolute certainty will never be established. When this case goes to trial, there will still be differences of opinion about the cause of Elizabeth's illness and injuries. However, Elizabeth presumably had a factual basis for the assertions she made on May 9, 1995. Rule 11, M.R.Civ.P., requires that we make that assumption.

¶59 The majority analogizes this case to *Hando* by stating that both claimants had a mere "belief or suspicion" of a causal connection prior to receipt of actual medical documentation and that the "belief or suspicion" was not sufficient to commence the period of time covered by the statute of limitations. As a matter of law, I would conclude that if Elizabeth had adequate knowledge to make the representations made in her motion to amend her Property Settlement Agreement, she had adequate knowledge of the causal connection between Robert's negligence and her injury or illness to file a complaint.

¶60 In ¶ 22 of the majority Opinion, the majority states in response to Justice Rice's dissent that judicial estoppel does not apply here because Elizabeth's current position is not

25

inconsistent with what she averred on May 9, 1995. I totally agree that what she alleges in her complaint is not inconsistent with what she alleged in her motion to amend her Property Settlement Agreement. However, that is not a reason to reject judicial estoppel. It is the principal fact in support of judicial estoppel. What is inconsistent is Elizabeth's averment made on May 9, 1995, and her allegation that she did not know about a causal connection between Robert's negligence and her injuries or illness until sometime in 1996.

¶61    I would not apply judicial estoppel for other reasons. However, the majority's observations in ¶ 22 of the majority Opinion completely support this dissent as well as the application of judicial estoppel.

¶62    For these reasons, I would conclude that based on the undisputed facts, Elizabeth knew of the causal connection between Robert's negligence and her injuries more than three years prior to the time that she filed her complaint and that her complaint is, therefore, barred by the applicable statute of limitations. For that reason, I would affirm the District Court's order granting summary judgment to the Defendant.


                                        /S/ TERRY N. TRIEWEILER

26